UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

RHONDA GARNER D/B/A DÉCOR
SPECIALTIES, ON BEHALF OF HERSELF AND
ALL OTHERS SIMILARLY SITUATED,

                          Plaintiffs,

                  -v.-

MBF LEASING, LLC, LINA KRAVIC, BRIAN
FITZGERALD, SAM BUONO, AND WILLIAM
HEALY,

                          Defendants.

                  07 CV 5607 (WCC) (MDF)

———————————————————————— x


## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b), FED. R. CIV. P.


**MOSES & SINGER LLP**
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 554-7800

*Attorneys for Defendants*
*MBF Leasing, LLC, Lina*
*Kravic, Brian Fitzgerald, and*
*Sam Buono*

Of Counsel:

    Abraham Skoff, Esq.
    Jayson Glassman, Esq.

# TABLE OF CONTENTS

Page

PRELIMINARY STATMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 1

ARGUMENT ........................................................................................................................ 4

I.     THE COURT HAS NO PERSONAL JURISDICTION OVER BRIAN FITZGERALD .......................................................................................... 4

     A.    Mr. Fitzgerald Is Not Subject To General Jurisdiction............................. 5

     B.    Mr. Fitzgerald Is Not Subject To Specific Jurisdiction ............................ 6

II.    PLAINTIFF'S FAIR CREDIT REPORTING ACT CLAIM MUST BE DISMISSED ................................................................................................... 7

III.   THE LEASE AGREEMENTS ARE VALID AND FULLY COMPLY WITH ARTICLE 2A, NEW YORK UNIFORM COMMERCIAL CODE, WHICH GOVERNS EQUIPMENT FINANCE LEASES ................................... 9

IV.   THE COMPLAINT FAILS TO STATE A FRAUD CLAIM AGAINST MBF AND THE INDIVIDUAL DEFENDANTS ........................................... 12

     A.    Plaintiff Has Not Pled Any Basis For A Fraud Claim Against The Individual Defendants.................................................................... 13

     B.    Plaintiff Failed To Plead A Claim Of Fraudulent Concealment With Sufficient Particularity .................................................... 15

     C.    Plaintiff Has Not Pled A Claim Of Fraudulent Inducement With Sufficient Particularity .......................................................... 16

     D.    Plaintiff's Fraud Claim is Duplicative Of The Breach Of Contract Claim And Must Be Dismissed .............................................. 18

V.    PLAINTIFF'S BREACH OF CONTRACT CLAIM MUST BE DISMISSED ................................................................................................. 20

VI.   PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT MUST BE DISMISSED ................................................................................................. 21

VII.  PLAINTIFF'S CLAIM FOR "MONEY HAD AND RECEIVED" MUST BE DISMISSED................................................................................ 22

VIII. PLAINTIFF'S CIVIL CONSPIRACY CLAIM MUST BE DISMISSED .......... 22

IX.   PLAINTIFF'S CONCERTED ACTION CLAIM MUST BE DISMISSED ....... 23

CONCLUSION .................................................................................................................. 24

## PRELIMINARY STATMENT

Defendants MBF Leasing, LLC ("MBF"), and Lina Kravic, Brian Fitzgerald, and Sam Buono (collectively, the "Individual Defendants") (MBF and the Individual Defendants, together, "Defendants"), by their counsel, Moses & Singer LLP, respectfully move this Court, pursuant to Rule 12(b), Fed. R. Civ. P, for an order dismissing the Complaint of plaintiff, Rhonda Garner d/b/a Décor Specialties, asserted on behalf of herself and others similarly situated (collectively, "Plaintiff"). The basis of this motion is that the Court lacks personal jurisdiction as to defendant Fitzgerald, and the Complaint fails to state a claim upon which relief can be granted.

## STATEMENT OF FACTS

MBF is in the equipment lease finance business, specializing in the lease financing of electronic point of sale equipment, such as point of sale credit card swiping machines, as well as other types of business equipment that sell for under $10,000. Complaint, ¶¶ 6, 17, 23.[1] MBF finances equipment for small businesses through "equipment finance lease" contracts. ¶ 23. As is typical of finance leases, MBF does not manufacture or select the equipment leased by its lessees. MBF dies not typically have no dealings with the lessee until after the lessee and vendor have reached an agreement as to the equipment and financing being obtained.

William Healey is alleged by Plaintiff to be the President of MBF. ¶ 7. Sam Buono is the Vice President of MBF. Id. Lina Kravic is the Operations Manager of MBF. Id. Brian Fitzgerald is the Executive Vice President of MBF's business development. Id.

---

[1] References to ¶ __ are to paragraphs in the Complaint. A copy of the Complaint is annexed as Exhibit C to the Declaration of Jayson Glassman ("Glassman Decl.") submitted herewith. Unless otherwise indicated, all references to Exhibits are to the Exhibits annexed to the Glassman Decl.

Plaintiff Rhonda Garner is a California business owner.  ¶ 1.  Plaintiff is a merchant, doing business "under the name and style of Decor Specialties."  ¶ 5.  On or about January 5, 2005, Décor Specialties entered into a forty-eight (48) month finance lease agreement with MBF (the "Lease") for a credit card point of sale terminal.  ¶ 52.  The Lease is titled in large bold letters on its first page as an "**EQUIPMENT FINANCE LEASE**."  Ex. A, at 1 (emphasis in original).  Under the section "**LEASE ACCEPTANCE**" on Page 1, the Lease was signed and accepted on behalf of Décor Specialties by Ms. Garner who is identified as the President of Décor Specialties.  Id. at 1 (emphasis in original).  The Lease acceptance – which the plaintiff signed – reads in full:  "Lessee has read and agrees to all terms and conditions contained in this Equipment Finance Lease.  THIS IS A NON-CANCELLABLE LEASE FOR THE FULL TERM INDICATED HEREIN."  Id.; ¶ 29.  The lease form, below the term "**EQUIPMENT FINANCE LEASE"** reads "**ABOUT YOUR BUSINESS**" and below that reads "Lessee (Corporate Business Name)." [2]  Id. (emphasis in original).  Décor Specialties is identified as a "Gift Store" on the line that reads "Type of Business."  Id.  The Lease, on the signature page, specifically provides for the deduction of the monthly lease payments from the lessee's bank account.  Id. Indeed, the Lease provides that automatic bank deduction is "a fundamental condition to induce Lessor to accept this Equipment Finance Lease."  Ex. A at 1.  Décor Specialties provided a voided check, together with its business license, to the vendor, Universal Merchant Services ("UMS") for the purpose of commencing automatic bank deductions.  Glassman Decl., Ex. B.  In

---

[2]       MBF Leasing only finances leases of credit card terminals to businesses and not to consumers.  Of course, it is self-evident that only businesses would have use for credit card terminals as they do not lend themselves to personal, family or household use.

addition, the signature page of the Lease contains a merger clause in large print capital letters.[3]
Ex. A, at 1.  Plaintiff's initials appear beneath the merger clause on the designated line.

The Lease is personally guaranteed by plaintiff.  Ex. A, at 1.  The **PERSONAL GUARANTY**, contained on the first page of the Lease and separately signed by Plaintiff, is absolute and unconditional.  ¶ 29.

The Lease itself is on a single, long sheet of heavy paper, folded in the middle to create a four sided booklet form.  Ex. A.  About an inch below the signature block, in the bottom left corner, it states that it is "Page 1 of 4."  Id. at 1.  Contrary to Plaintiff's allegations, the print size is as large as or larger than the print size on the rest of the page.  Id.

The Lease also contains several other terms that are relevant to this motion.  Paragraph 3 provides that the Lease is non-cancellable and acknowledges that, as provided for lease financing agreements under Article 2A of the UCC, the lessor did not manufacture or select the equipment leased.  Ex. A, ¶ 3.  Paragraph 7 provides for the lessee to remit all applicable taxes to MBF. Paragraph 9 places the risk of loss of the equipment on the lessee.  Paragraph 10 requires the lessee to insure the equipment or to pay to MBF a fee for a waiver of this provision.

As is evident from the Complaint, none of the named Defendants are alleged to have had any communication with Plaintiff before Plaintiff entered into the Lease.  The only allegation that even addresses the Individual Defendants by name is found in paragraph 7 of the Complaint, where Plaintiff alleges that as members of senior management of MBF, the Individual Defendants are the "masterminds" of the allegedly "fraudulent scheme" of which Plaintiff complains.  The Complaint does not provide one detail as to what any of the Individual Defendants is alleged to have done, if anything, in furtherance of the alleged "scheme."

---

[3]       Paragraph 23 on page 4 of the Lease also contains an additional merger clause. Ex. A, at 4.

As is true in the case of most finance leases, Plaintiff's dealing were with a vendor, which actually marketed the credit card processing services that Plaintiff signed up for. After Plaintiff and the vendor agreed on the equipment that Plaintiff was to obtain, and on lease financing, the vendor submitted a completed lease application package to the finance lessor, in this case, MBF, for credit approval. The vendor with whom Plaintiff dealt was not named as a party to this action, even though that vendor – and not the named Defendants – is apparently responsible for the allegedly fraudulent statements of which Plaintiff complains.

## ARGUMENT

## I.

## THE COURT HAS NO PERSONAL JURISDICTION OVER BRIAN FITZGERALD.

This Court does not have personal jurisdiction over defendant Brian Fitzgerald because Mr. Fitzgerald does not live, work or do business in New York, and because he did not do anything, either inside or outside of New York, that gives rise to jurisdiction over him.

The sole allegation in the Complaint that addresses Mr. Fitzgerald, paragraph 7, fails to set forth any facts on which jurisdiction could be based. It alleges only that Mr. Fitzgerald is the "vice president of MBF's business development." No facts about Mr. Fitzgerald's connection to New York or to the present claims are alleged. As set forth in the accompanying Declaration of Brian Fitzgerald, there can be no good faith allegation that Mr. Fitzgerald has sufficient contacts with New York, because he does not. He has lived his entire life in Oak Park, Illinois. He does not own any property in New York. He does not have a bank account in New York, and he does not have a mailing address in New York. See Fitzgerald Decl. See Fitzgerald Decl. Mr. Fitzgerald has never had an office in New York City. His office has been located at 283 West 83rd Street, Burr Ridge, Illinois, for the entire time that he has been employed by MBF.

Mr. Fitzgerald did not become an employee of MBF until January 19, 2006.  The claims asserted in the Complaint involve a Lease that Plaintiff executed on January 5, 2005.  Mr. Fitzgerald was not employed by MBF until more than a year after the Lease was entered into.  Although paragraph 7 of the Complaint alleges that the "individual defendants are the senior management of MBF, and are the masterminds behind the fraudulent scheme at issue," Mr. Fitzgerald was not even employed by MBF at the time of the alleged fraud.

### A.     Mr. Fitzgerald Is Not Subject to General Jurisdiction

New York Civil Practice Law and Rules ("CPLR") § 301 provides that "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore."  Under CPLR § 301, general personal jurisdiction is established if a person[4] is "doing business" in New York.  "The New York Court of Appeals has interpreted this provision to mean that a foreign [defendant] is amenable to suit in [New York] if it is engaged in such a continuous and systematic course of doing business here as to warrant a finding of its presence in this jurisdiction."  Realuyo v. Abrille, 93 Fed. Appx. 297 (2d Cir. 2004) (citing Frummer v. Hilton Hotels Int'l, Inc., 19 N.Y.2d 533, 536 (1967), cert. denied, 389 U.S. 923 (1967)) (internal quotation marks omitted).  To determine whether a defendant is doing business in New York, a court considers the following factors:  "the existence of an office in New York; the solicitation of business in the state; the presence of bank accounts and other property in the state; and the presence of employees of the foreign defendant in the state."  Digital Lab Solutions, LLC v.

---

[4]     As the district court noted in First Capital Asset Management, Inc. v. Brickelbush, Inc., 218 F. Supp. 2d 369, 392 (S.D.N.Y. 2002), "New York courts do not agree on whether a natural person may be subject to "doing business" jurisdiction under Section 301."  Compare ABKCO Indus., Inc. v. Lennon, 52 A.D.2d 435 (1st Dep't 1976), with Nilsa B.B. v. Clyde Blackwell H., 84 A.D.2d 295 (2d Dep't 1981).  In Laufer v. Ostrow, 55 N.Y.2d 305, 313-14 (1982), the New York Court of Appeals sidestepped the issue, finding that, even assuming that an individual who in fact is doing business is subject to jurisdiction, the defendant's in-state activity was not sufficient to satisfy the doing-business standard.  Here, as in Laufer, the Court also need not address the issue because Mr. Fitzgerald's in-state activity is clearly not sufficient to satisfy the doing business standard.

Stickler, 2007 WL 700821 (S.D.N.Y. Mar. 7, 2007); see also Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88 (2d Cir. 2000). No single criterion is determinative in assessing whether general personal jurisdiction has been established. See Mones v. Commercial Bank of Kuwait, S.A.K., 2007 WL 2200706, at *3 (S.D.N.Y. July 31, 2007).

Here, none of the indicia of general jurisdiction are present. Mr. Fitzgerald neither lives nor works in New York. He has attended exactly one business meeting in New York, at the time he was hired by MBF, and that meeting had nothing to do with Plaintiff. Clearly, Mr. Fitzgerald has not engaged in a continuous and systematic course of doing business in the State.

### B.    Mr. Fitzgerald Is Not Subject to Specific Jurisdiction

Mr. Fitzgerald is also not subject to specific personal jurisdiction in New York under CPLR § 302(a)(2). Pursuant to CPLR § 302(a)(2), "… a court may exercise personal jurisdiction over any non-domiciliary … who in person …:  (2) commits a tortious act within the state …" The statute "reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act." Bensusan Restaurant Corp. v. King, 126 F.3d 25, 28-29 (2d Cir. 1997) (citing Feathers v. McLucas, 15 N.Y.2d 443 (1965)). There is no allegation in the Complaint that defendant Fitzgerald committed a tortious act in New York State, and the declaration he submits in supports of this motion demonstrates conclusively that he did not. Mr. Fitzgerald was not even employed by MBF until more than a year after Plaintiff entered into her Lease. He had no contacts whatsoever with Ms. Garner, has never met her, and has never communicated with her. Clearly, he has not committed a tortious act in New York State that gives rise to Ms. Garner's claim.

For the same reason, Mr. Fitzgerald is also not subject to specific jurisdiction under CPLR § 302(a)(3). "The exercise of jurisdiction pursuant to section 302(a)(3) requires, at a bare

minimum, that the complaint adequately allege a tortious act committed by the [defendant]."

Anderson v. Indiana Black Expo, Inc., 81 F. Supp. 2d 494, 504 (S.D.N.Y. 2000). Mr. Fitzgerald

did not commit a tortious act, either inside or outside New York, that caused injury to Plaintiff.

Because there is neither general, nor specific, jurisdiction over Mr. Fitzgerald, the Complaint

should be dismissed as against him for lack of personal jurisdiction.

## II.

## PLAINTIFF'S FAIR CREDIT REPORTING ACT CLAIM MUST BE DISMISSED

Plaintiff's claim based on the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-

2(b), must be dismissed for two reasons: (1) Plaintiff is not a "consumer" as defined by the

FCRA, and (2) and Defendants are not "furnishers of information" within the meaning of the

FCRA. ¶¶ 58-62. Nor is there a private right of action to maintain a claim of the type alleged,

which is under 15 U.S.C. § 1681s 2(a). ¶¶ 48-49, 58-60.

The FCRA is a consumer protection statute that regulates the collection, dissemination

and use of *consumer* credit information. Along with its companion statute, the Fair Debt

Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, it forms the basis of *consumer* credit

rights. The law is quite clear that these statutes apply to personal, household and consumer

matters, not to business transactions, or to the personal guarantee of a business obligation[5]

---

[5] Indeed, plaintiff's counsel is well aware that plaintiff's FCRA claim is improper, as counsel's nearly identical claim, under the FDCPA was dismissed on this exact ground in the Pludeman matter, and the dismissal of this claim was affirmed by the Appellate Division. "Pludeman's alleged debt is not based upon a consumer's alleged obligation to pay money but rather a guaranty to pay an obligation of his business and therefore does not arise out of a transaction primarily for personal, family, or household purposes." Pludeman, et al v Northern Leasing Services, Inc., Index No. 04/101059 (Slip Copy at *9), aff'd in part, rev'd in part, 40 A.D.3d 366 (this holding affirmed). A copy of the opinion of the Hon. Sherry Klein Heitler, entered on or about April 7, 2005, is attached for the Court's convenience.

It is uncontested that Plaintiff, a "small business owner" (¶ 1), is a merchant. As a merchant complaining of reports related to her business lease and the personal guarantee thereof, Plaintiff, as a matter of law, fails to state a claim under the FCRA. See, e.g., Lucchesi v. Experian Info. Solutions, Inc., 226 F.R.D. 172 (S.D.N.Y. 2005) (Robinson, J.). As set forth in 16 C.F.R., Part 600, Appendix comment 6(b): "A report on a consumer for credit or insurance in connection with a business operated by the consumer is not a 'consumer report,' and the Act does not apply to it." Lucchesi v. Experian Info. Solutions, Inc., 2003 WL 21542317, at *2 (S.D.N.Y. July 7, 2003) (Kaplan, J.). In dismissing plaintiff's amended FCRA claim, this Court subsequently held that the Act does not apply to reports relating to "a business operated by the consumer." Lucchesi, 226 F.R.D. at 174; see also Boothe v. TRW Credit Data, 523 F. Supp. 631 (S.D.N.Y. 1981).

Plaintiff disingenuously attempts to classify herself as a "consumer" by alleging that Defendants have engaged in a "practice of furnishing … adverse information against the **personal** credit reports of individual guarantors, i.e. business proprietors or sole owners … ." ¶ 48. However, Plaintiff's allegations make clear that she brings this action as a merchant, in connection with an equipment lease of her business which she guaranteed; she asserts that Defendants have furnished adverse information against "*guarantors, i.e. business proprietors or sole owners*" and individuals who "*guaranteed* its Leases." ¶¶ 48, 59 (emphasis added). Thus, Plaintiff, and the putative class, fail to state claims under FCRA.

Plaintiff's FCRA claim must also be dismissed because Defendants are not "furnishers of information" under the FCRA. "[C]ourts have defined the term as an entity which transmits information concerning a particular debt owed by a particular consumer to consumer reporting agencies." Pinson v. Equifax Credit Info. Servs., LLC, 2007 WL 211225, at *13 (N.D. Okla.

Jan. 24, 2007) (emphasis added); <u>Carney v. Experian Info. Solutions, Inc.</u>, 57 F. Supp. 2d 496,

501 (W.D. Tenn. 1999) (same).  Because Plaintiff and the putative class are not "consumers",

Defendants cannot be "furnishers of information", and the claims against them must be

dismissed.  <u>See</u> <u>Donohue v. C. Blosenski Disposal Co.</u>, 2006 U.S. Dist. LEXIS 85968, at *3-4

(E.D. Pa. Nov. 28, 2006); <u>Breed v. Nationwide Mut. Ins. Co.</u>, 2006 U.S. Dist. LEXIS 40668, at

*5 (W.D. Ky. June 15, 2006).

Finally, Plaintiff alleges that Defendants violated FCRA because "[a]s furnishers of

information, [they] provided inaccurate and incomplete information to credit reporting agencies

against Ms. Garner and class members who guaranteed its Leases." ¶ 59.  The prohibition on

reporting inaccurate information is governed by FCRA § 1681s-2(a).  No private cause of action

exists under that subsection.  <u>See</u> <u>O'Diah v. New York City</u>, 2002 WL 1941179, at *12

(S.D.N.Y. Aug. 22, 2002).  Accordingly, to the extent Plaintiff purport to assert a claim pursuant

to FCRA § 1681s-2(a), it must be dismissed.

**III.**

**THE LEASE AGREEMENTS ARE VALID AND FULLY COMPLY
WITH ARTICLE 2A, NEW YORK UNIFORM COMMERCIAL CODE,
<u>WHICH GOVERNS EQUIPMENT FINANCE LEASES</u>**

The transaction giving rise to the claim sued upon is an equipment finance lease.  As

explained by Justice Cahn in <u>DVI Financial Services, Inc. v. Cardio-Pulmonary Complex, LLC.</u>,

Index No. 600065/01, Slip Copy at 3 (Sup. Ct. N.Y. Co. Dec. 31, 2001) (copy attached):

> Under the UCC, a finance lease is a lease, in which the lessor does
> not select, manufacture, or supply the goods, but rather, the lessee
> negotiates directly with the supplier or manufacturer, and then
> arranges for the lessor to buy the goods, in order to lease them to
> the lessee (<u>see</u> UCC § 2-A-103[g]).  The lessor is simply a source
> of financing, and is not accountable for any defects in the goods,
> although the lessee is entitled to the promises and warranties made
> by the entity supplying the goods.  Moreover, the UCC provides a
> statutory "hell or high water" clause which makes a lessee's

obligations under a finance lease irrevocable upon acceptance of
the goods, despite what happens to the goods afterwards.  (internal
citation omitted).

See also NY UCC § 2A-102, Official Comment, Purposes.

There are two types of finance leases, and the lease at issue qualifies as both. The first is
a consensual finance lease whereby the lease agreement excludes warranty liability of the lessor
to the lessee and contains a "hell or high water clause" that requires the lessee to make lease
payments even if the leased equipment is defective or destroyed.  See 2 White & Summers,
Uniform Commercial Code § 13-3(a).

The second type of finance lease is a statutory finance lease as defined in UCC § 2A-
103(g).  The statutory finance lease was created as a statutory "safe harbor" for those that feared
that their lease agreements would not be interpreted as finance leases.  Id. § 13-3(b).
Significantly, the laws that apply to ordinary leases are modified for statutory finance leases in
twelve separate sections of Article 2A.[6]  Section 2A-407 specifically authorizes the statutory
"hell or high water" clause, providing that the lessee's obligation to pay rent is "irrevocable and
independent" upon signing.[7]  Section 2A-109 allows finance lessors to accelerate payments "at
will".

Finance leases which contain such terms – some of the very terms about which plaintiff
complains -- fully comply with Art. 2A of the UCC and are enforceable.  See, e.g., Canon
Financial Services, Inc. v. Medico Stationery Service, Inc., 300 A.D.2d 66, 66-67 (1st Dep't
2002) (summary judgment granted "in view of the subject agreement's provisions that plaintiff
made no representations or warranties of any kind with respect to the copier, that plaintiff was

---

[6]  §§ 209, 211(2), 212(1), 213, 219(1), 220(1)(a), 221, 405(c), 406(1), 407, 516(2) and 517(1)(a) and (2).

[7]  In contrast, the "hell or high water clause" does not apply to consumer leases.  § 2A-407(1).  A consumer lease is
defined as a "lease primarily for personal, family, or household purposes."  § 2A-103(1)(e).

not the supplier, dealer or manufacturer of the copier, that any warranties made by the supplier,

dealer or manufacturer were not part of the subject agreement, and that defendants would look

solely to the supplier, dealer or manufacturer, and would continue to make the payments due

under the lease, even if the copier was for any reason unsatisfactory.  These provisions are

typical of a finance lease as defined in UCC 2-A-103(1) (g)…") (internal citation omitted); Orix

Credit Alliance v. N.E. Tech Excavating Corp., 222 A.D.2d 796, 798 (3d Dep't 1995) (enforcing

terms of lease and dismissing claim of usury); Agristor Leasing v. Barlow, 180 A.D.2d 899, 901

(3d Dep't 1992) (same); Master Lease Corp. v. Manhattan Limousine, Ltd., 177 A.D.2d 85 (2d

Dep't 1992) (enforcing lease with disclaimer of warranties); DVI Financial Services, Inc. v.

Cardio-Pulmonary Complex, LLC, supra, (enforcing finance lease and rejecting claim that

lessees were "somehow pressured into buying more expensive equipment than they needed" as

"plainly without merit").

Given the foregoing, Plaintiff's contention that the terms of the Lease are

"unconscionable" (¶¶70, 75) is wholly without merit.  Each of the Lease provisions assailed in

the Complaint are entirely consistent with and supported by Article 2A of the UCC.  As a matter

of law, they are valid and enforceable.  Plaintiff's allegation in Paragraph 36 of the Complaint

that, at the time the Leases were entered into, credit card terminals were available at a lower

purchase price than the aggregate payments over the lease term -- even if true -- does not render

the Leases unenforceable.  Plaintiff was free to do business with a different credit card company,

or not do so; she was free to buy the credit card terminal or to finance it; she was free to finance

through MBF lease, or through some other financing.  Having entered into a noncancellable lease

on terms contemplated by the UCC, Plaintiff cannot avoid the terms of the Lease because she

found a better service.  There is no requirement in Article 2A or elsewhere that a lessor reveal to

a lessee the retail price of the equipment leased.  What Plaintiff is essentially alleging is that she entered into a bad deal that she wants to disown.  That, however, is not actionable.  <u>See</u> <u>Lease Corporation of America v. Resnick</u>, 288 A.D.2d 533, 535 (3d Dep't 2001) ("While defendants, with the benefit of hindsight, may have made a bad bargain, it is not the function of this Court to rewrite the parties' agreement.").

Finally, Plaintiff's contention that the last three (3) pages of the Lease, and the terms and conditions thereon, are "hidden," is wholly inconsistent with the physical layout of the Lease (which is one long piece of paper, folded in half to create four sides), and the fact that the Lease states "Page 1 of 4" on the very first page, directly below the "Lease Acceptance" and "Personal Guaranty" provisions containing, *inter alia*, plaintiff's signature(s).  Ex. A, at 1; <u>see</u> <u>also</u> <u>Gillman v. Chase Manhattan Bank</u>, 73 N.Y.2d 1, 12 (1988) (upholding security agreement where terms and conditions were printed on reverse side of signature page and were referenced directly above signature line).  Additionally, the provision entitled "**ABOUT YOUR BANK**" – which is located on the very first page of the Lease, refers to Paragraph 11, which is located on page three (3) thereof.  This provision contains Plaintiff's own initials, indicating that she read and initialed this provision before signing.  Plaintiff's claims of "unconscionability" are specious.

IV.

<b>THE COMPLAINT FAILS TO STATE A FRAUD CLAIM<br><u>AGAINST MBF AND THE INDIVIDUAL DEFENDANTS</u></b>

To plead a claim of common law fraud, plaintiff must adequately plead: 1) the making of a misrepresentation of a material fact by the defendant; 2) falsity; 3) scienter; 4) deception; 5) justifiable reliance; and 6) injury.  <u>Cohen v. Koenig</u>, 25 F.3d 1168, 1172 (2d Cir. 1994) (citing New York law); <u>Barclay Arms, Inc. v. Barclay Arms Assocs.</u>, 74 N.Y.2d 644, 646-47 (1989); <u>Pope v. Saget</u>, 29 A.D.3d 437, 441 (1st Dep't 2006); <u>Channel Master Corp. v. Aluminum Ltd.</u>

Sales, 4 N.Y.2d 403, 406-07 (1958).  Each of these elements must be supported by factual allegations sufficient to satisfy Rule 9(b), Fed. R. Civ. P.  Rule 9(b) requires that the circumstances constituting the fraud to be stated with particularity, and imposes a more stringent standard of pleading than general notice pleading; complaints of fraud which fail to meet this threshold have been consistently dismissed.  See Lerner v. Fleet Bank, N.A., 459 F.3d 273, 292-93 (2d Cir. 2006) plaintiffs "failed to allege actual knowledge of fraud with the particularity necessary to survive the heightened pleading requirements of Fed. R. Civ. 9(b)"); Druyan v. Jagger, 2007 U.S. Dist. LEXIS 64445, at *21-32 (S.D.N.Y. Aug. 29, 2007); MTV Networks, Inc. v. Curry, 867 F. Supp. 202, 206 (S.D.N.Y. 1994) ("A claim for fraud *must* be dismissed under Rule 12(b)(6) if it does not satisfy the requirements of Rule 9(b)." (emphasis added)).

Plaintiff's Complaint disregards the heightened pleading requirements of Rule 9(b). Plaintiff fails to allege specific acts of fraud that were committed by each of the Defendants.  The Complaint fails to plead with particularity, or at all, when any of the named Defendants made the alleged misrepresentations and fails to allege which Defendant made each purported misrepresentation, or how it was made.  In fact, the alleged misrepresentations are presented in a mere footnote to the Complaint (see ¶ 52, n. 4), and were clearly made not by any of the named Defendants, but rather, by an independent vendor with whom Plaintiff dealt in the course of entering into the Lease.

A.    **Plaintiff Has Not Pled Any Basis For A Fraud Claim Against The Individual Defendants**

Plaintiff compounds the deficiencies in the Complaint by naming corporate officers of MBF, without alleging tortious (or other) acts on their part, which would give rise to liability. Plaintiff attempts to infer culpability for the Individual Defendants without specifying facts that would satisfy Rule 9(b), or the substantive law of piercing.  Plaintiff merely identifies the

Individual Defendants in a single paragraph (¶ 7), and then ignores them for the remainder of the Complaint.

Corporate officers cannot be held liable for fraud absent a specific, non-conclusory allegation stating their participation. See Marine Midland Bank v. John E. Russo Produce Co., 50 N.Y.2d 31, 44 (1980) ("[C]orporate officers and directors are not liable for fraud unless they personally participate in the misrepresentation or have actual knowledge of it."); see also Prudential-Bache Metal Co. v. Binder, 121 A.D.2d 923 (1st Dep't 1986) (no liability for shareholders and officers in absence of substantive allegations that they personally participated in or had actual knowledge of the alleged fraud); Travelers Ins. Co. v. Lewis, 756 F. Supp. 172, 179-80 (S.D.N.Y. 1991) (defendant director/officer not liable for fraud where plaintiff failed to allege any fact incident that suggested defendant's intent to defraud). "Scienter may not be inferred from knowledge of alleged false representations." Id. at 180.

Here, Plaintiff attempts, in substance, to pierce the corporate veil, without any allegation to warrant the imposition of personal liability on the Individual Defendants. See, e.g., Worthy v. New York City Housing Authority, 21 A.D. 3d 284, 288 (1st Dep't 2005) (something more than mere status of corporate officer must exist before individual liability can attach). Plaintiff has failed to allege facts indicating independently tortious conduct on the part of the Individual Defendants. There is not one particularized allegation against any Individual Defendant acting in a corporate or individual capacity. See Prudential-Bache Metal Co. v Binder, 121 A.D.2d 923 (1st Dep't 1986). Accordingly, any fraud claim against any of the Individual Defendants must be dismissed.

**B.    Plaintiff Failed To Plead A Claim Of Fraudulent**
<u>**Concealment With Sufficient Particularity**</u>

To plead a claim of fraudulent concealment under New York law, a plaintiff must also allege with particularity that a defendant had a duty to disclose material information.  <u>Goldstein v. CIBC World Markets Corp.</u>, 6 A.D.3d 295, 296 (1st Dep't 2004); <u>E.B. Liberation Publications, Inc.</u>, 7 A.D.3d 566, 567 (2d Dep't 2004).  Absent a duty to speak, nondisclosure does not ordinarily constitute fraud, <u>Jolly King Restaurant, Inc. v. Hershey Chan Realty, Inc.</u>, 214 A.D.2d 422, 422 (1st Dep't 1995), particularly where no fiduciary or confidential relationship exists.  <u>See</u> <u>DH Cattle Holdings Co. v. Smith</u>, 195 A.D.2d 202, 208 (1st Dep't 1994) (mere silence does not amount to concealment actionable as fraud unless done in the context of fiduciary or confidential relationship); <u>IBM Credit Financing Corp. v. Mazda Motor Mfg. (USA) Corp.</u>, 152 A.D.2d 451 (1st Dep't 1989) (same).

Here, Plaintiff fails to specify how MBF or the Individual Defendants (none of whom are alleged to have dealt directly with Plaintiff) failed to disclose material terms of the Lease or concealed anything.  <u>See</u> ¶ 73.  Plaintiff fails to specify the basis for any purported fiduciary or confidential relationship between the parties.  <u>See</u> <u>Glazer v. Lo Preste</u>, 278 A.D.2d 198, 199 (2d Dep't 2000).  To the contrary, the Complaint describes the lease as an arms-length business transaction.

Finally, Plaintiff fails to specify the basis for the application of any presumption that MBF or its officers knew that Plaintiff or any of the putative class members were acting on mistaken knowledge in entering into their respective equipment leases.  Plaintiff's repeated conclusory allegations that Defendants "knew but concealed" or were somehow "reckless in not knowing", do not provide a factual basis for an inference that Defendants acted with intent to defraud.   ¶ 33; <u>see</u> <u>Shields v. Citytrust Bancorp, Inc.</u>, 25 F.3d 1124, 1128-31 (2d Cir. 1994)

(plaintiff's pleading technique of coupling factual statement with conclusory allegation of fraudulent intent insufficient under Rule 9(b)); see also O'Brien v. National Property Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991) (relaxation of Rule 9(b)'s specificity requirement for scienter must not be mistaken for license to base claims of fraud on speculation and conclusory allegations; ample factual basis must be supplied); Lerner, 459 F.3d at 290.

The Complaint is devoid of any factual allegations that support Plaintiff's claim that she was misled by either MBF or the Individual Defendants into signing the Lease. Instead, the Complaint is rife with broad, conclusory statements, including, without limitation, Paragraph 33. This is just one of many examples where Plaintiff fails to allege a factual nexus between non-actionable, innocuous factual allegations and her inflammatory accusations. See Cosmas v. Hassett, 886 F.2d 8, 12-13 (2d cir. 1989) (complaint must "allege facts which give rise to a strong inference that the defendants possessed the requisite fraudulent intent.").

Plaintiff alleges that the Lease is misleading on its face because the first page of the Lease allegedly conceals or fails to refer to the remaining three (3) pages thereof. In support of this contention, Plaintiff states that the signature line(s) appear only on the first page (¶ 26); that the first page contains all "material information usually expected in a small business transaction" (¶ 27). Plaintiff, however, completely ignores references to the remaining three (3) pages of the Lease contained on the first page thereof, including, *inter alia*, the clear and appropriately sized reference to "Page 1 of 4", and the specific reference to paragraph 11 (paragraph 11 is located at page 3), in the section entitled "**ABOUT YOUR BANK**".

**C.    Plaintiff Has Not Pled A Claim Of Fraudulent Inducement With Sufficient Particularity**

In order to sustain a claim for fraudulent inducement, a plaintiff must prove "misrepresentation or a material omission of fact which was false and known to be false by

defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." <u>Shea v. Hambros PLC</u>, 244 A.D.2d 39, 46 (1st Dep't 1998) (internal quotation marks and citations omitted).

The allegations in the Complaint fail to allege with particularity that Defendants made any misrepresentations to Plaintiff in connection with the negotiation and execution of her Lease. In fact, Plaintiff acknowledges in her Complaint that a non-party sales representative, not a Defendant was involved in the negotiations leading to Plaintiff's execution of the Lease.

The Lease also contains a merger clause on the signature page – the very page that Plaintiff signed in two places. <u>See</u> Ex. A, at 1. The merger clause bars any claim of reliance on any purported oral misrepresentation put forth by the non-party salesman (or Defendants if a colorable allegation can be made – which it cannot). <u>Citibank, N. A. v. Plapinger</u>, 66 N.Y.2d 90, 92 (1985); <u>see</u> <u>also</u> <u>Wittenberg v. Robinov</u>, 9 N.Y.2d 261 (1961); <u>Pine Equity NY, Inc. v. Manhattan Real Estate Equities Group LLC</u>, 2 A.D.3d 248, 248-49 (1st Dep't 2003).

In essence, Ms. Garner has asserted nothing more than that she failed to read the Lease before signing it, and failed to maintain a copy after it was signed. "A party who executes a contract is presumed to know its contents and to assent to them." <u>Holcomb v. TWR Express, Inc.</u>, 11 A.D.3d 513, 514 (2d Dep't 2004) (internal quotation marks omitted); <u>see</u> <u>Maines Paper and Food Service, Inc. v. Adel</u>, 256 A.D.2d 760 (3d Dep't 1998) (holding in the absence of fraud, duress or some other wrongful act by a party to a contract, a signer of an agreement is deemed to be conclusively bound by its terms whether or not he or she read).

This is especially important in a case like the present one, where MBF is a third party to the transaction between Plaintiff and the sales organization, and is relying on the parties' documents and signatures in advancing the capital to buy the equipment, and lease it to Plaintiff.

Further, as a matter of law, a Plaintiff's reliance on oral representations that are inconsistent with the terms of a written agreement is unjustified when a reading of the document would have revealed the truth.  See Societe Nationale d'Exploitation Industrielle des Tabacs et Allumettes v. Salomon Brothers International Ltd., 249 A.D.2d 232, 233 (1st Dep't 1998), lv. denied 95 N.Y.2d 762 (2000) (affirming dismissal of fraud claim solely for the reason that the alleged oral representations were meaningfully contradicted by letter agreements); see also Sandcham Realty Corp. v. Taub, 299 A.D.2d 220, 221 (1st Dep't 2002) (fraud claims properly dismissed where alleged representation was contradicted by express terms of agreement, rendering plaintiff's claimed reliance on such representation unjustifiable as a matter of law).

**D.      Plaintiff's Fraud Claim Is Duplicative Of The
         Breach Of Contract Claim And Must Be Dismissed**

Plaintiff's allegations of fraud are virtually identical to her breach of contract claim and, therefore, must be dismissed.  Indeed, Plaintiff's fraud claims seek to enforce no more than the promises that she claims were breached (¶¶ 68-76).  See Clark-Fitzgerald v. Long Island R.R., 70 N.Y.2d 382, 389 (1987) (fraud claim that only restates breach of contract claims may not be maintained); Krantz v. Chateau Stores of Canada, Ltd., 256 A.D.2d 186, 187 (1st Dep't 1998) (to plead a viable claim for fraud, plaintiff must allege breach of duty which is collateral or extraneous to the contract between the parties).  A fraud claim will be dismissed as "duplicative" where it is "based on the same facts as underlie the contract claim and is not collateral to the contract and no damages are alleged that would not be recoverable under contract measure of damages."  J.E. Morgan Knitting Mills v. Reeves Bros., 243 A.D.2d 422, 423 (1st Dep't 1996).  Here, the alleged misrepresentations on the part of Defendants are not collateral to the terms of the Lease.

The reasoning of the First Department in <u>Orix Credit Alliance, Inc. v. R. E. Hable Co.</u>, 256 A.D. 2d 114 (1st Dep't 1998), is instructive.  In <u>Orix</u>, plaintiff finance company commenced an action seeking to enforce a forum selection clause contained in loan agreements with defendants.  Defendants counterclaimed asserting that they and a purported class of borrowers had been defrauded by plaintiff who had imposed excessive charges and entered into loan agreements with the intent to impose undisclosed charges.  <u>Id</u>.  In rejecting defendants' counterclaims, the First Department held, 256 A.D. 2d at 115-16:

> A fraud claim that only restates a breach of contract claim may not be maintained (<u>Alamo Contract Builders v. CTF Hotel Co.</u>, 242 A.D.2d 643, 644 [2d Dep't 1997]).
>
> \*   \*   \*
>
> Here, the only misrepresentation identified by defendants was Orix's alleged present intention, at the time of contracting, to charge more than it promised under the contract.  As in <u>J.E. Morgan Knitting Mills</u> (<u>supra</u>), the damages defendants seek are nothing more than contract damages, namely the difference between what they actually owed and what they paid.  Moreover, far from being collateral to the contract, the purported misrepresentation was "directly related to a specific provision of the contract" (<u>Alamo Contract Builders v. CTF Hotel Co.</u>, [242 A.D.2d 643, 644]).  Indeed, it is hard to see what could be more central to a loan agreement than the calculation of the amounts due thereunder.

So too here.  The Complaint is devoid of any allegations that Plaintiff's damages were caused by anything different than the same operative facts alleged to support Plaintiff's breach of contract claim.  There are no allegations in the Complaint to indicate that Defendants' alleged misrepresentations are extraneous to the Lease itself.  <u>See</u> ¶¶ 52, 68-76.  Plaintiff's continued reliance on mere conclusory allegations is not enough.  <u>Alamo Contract Builders</u>, 242 A.D.2d at 644 ("It is well settled that a cause of action to recover damages for fraud may not be maintained when the only fraud charged related to a breach of contract.") (citations omitted); <u>Wegman v. Dairylea Coop.</u>, 50 A.D.2d 108, 113 (4th Dep't 1975), <u>lv. dismissed</u> 38 N.Y.2d 918 (1976).

Plaintiff alleges that a third-party vendor misrepresented to her that the leased equipment would save her business money and that the equipment would be "state of the art" and perform much better than her existing equipment. ¶ 52, n. 4. Such alleged misrepresentations, even if true, do not form the basis for a fraud claim against Defendants. See Cohen, 25 F.3d at 1172 (failure to fulfill a promise to perform future acts not grounds for fraud action unless there existed intent not to perform at the time promise was made; "[s]imilarly, statements will not form the basis of a fraud claim when they are mere 'puffery' or are opinions as to future events.") (citations omitted).

## V.

## PLAINTIFF'S BREACH OF CONTRACT CLAIM MUST BE DISMISSED

The Complaint fails to sufficiently allege that Defendants breached and/or failed to perform under any provisions of the lease or, in the alternative, that Defendants deprived Plaintiff of the benefits of the Lease. See EBC I, Inc. v. Goldman Sachs Co., 5 N.Y.3d 11, 22-23 (affirming dismissal of plaintiff's breach of contract claims for failure to adequately allege breach of contractual provisions or, alternatively, that defendant injured plaintiff's right to receive benefits under the contract in breach of the implied covenant of good faith and fair dealing); see also National Union Fire Ins. Co. of Pittsburg, PA v. Xerox Corp., 25 A.D.2d 309, 310 (1st Dep't 2006) (claim for breach of duty of good faith and fair dealing properly dismissed as mere substitute for plaintiff's non-viable contract claims) (citation omitted); see also Jaffe v. Paramount Communities, 222 A.D.2d 17, 22-23 (1st Dep't 1996) (plaintiff failed to allege any facts to demonstrate that defendant deprived him of any rights he had under the agreement ).

According to the Complaint, Defendants breached the Lease by charging and collecting sums in excess of those identified in the first page thereof (¶¶ 24, 69); by allegedly concealing

the remaining three pages and thereby imposing "undisclosed" fees (¶¶ 28-32, 36-38, 51-54, 69); by allegedly charging higher prices for business equipment available elsewhere for less (¶ 36); and because the Lease contains allegedly "extremely onerous terms" (¶¶ 36-38).

None of these allegations demonstrate that Defendants failed to perform under the Lease(s) and/or deprived Plaintiff of any rights she had under her Lease. See Sud v. Sud, 211 A.D.2d 423, 424 (1st Dep't 1995) (complaint must allege provisions of the contract "on which liability is predicated."); Lupinski v. Village of Ilion, 59 A.D.2d 1050, 1050-1 (4th Dep't 1977). New York law will not reconstruct a contract merely because on party is unhappy with its terms. Plaintiff's breach of contract claim is therefore deficient.

## VI.

## PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT MUST BE DISMISSED

A cause of action for unjust enrichment, like other "quasi-contract" theories, may not be maintained in the face of an express contract on the same subject matter. Sage Group Assoc., Inc. v. Dominion Textile (USA), Inc., 244 A.D.2d 281, 282 (1st Dep't 1997); West End Interiors v. Aim Constr. & Contracting Corp., 286 A.D.2d 250, 252 (1st Dep't 2001). Indeed, a contract will not be implied when there is a valid written agreement between the parties. See Saunders v. AOL Time Warner, Inc., 18 A.D.3d 216, 217 (1st Dep't 2005) (existence of enforceable contracts defeated unjust enrichment cause of action). As a matter of law, the Lease governs and Plaintiff may not avoid its terms and conditions by asserting a quasi-contract theory of recovery and treating the lease as a nullity.

**VII.**

**PLAINTIFF'S CLAIM FOR "MONEY HAD AND RECEIVED" MUST BE DISMISSED**

For the same reason, Plaintiff's claim for money had and received should be dismissed. It is well-settled law that a claim for "money had and received" is precluded where an express agreement exists between the disputing parties. See Fesseha v. TD Waterhouse Investor Services, Inc., 305 A.D.2d 268, 269 (1st Dep't 2003) (action for money had and received does not lie where express contract between parties exists); EBC I, Inc. v. Goldman Sachs Co., 5 N.Y.3d at 23, 8 ("existence of a valid contract governing the subject matter generally precludes recovery in quasi contract for events arising out of the same subject matter.").

**VIII.**

**PLAINTIFF'S CIVIL CONSPIRACY CLAIM MUST BE DISMISSED**

New York law does not recognize a substantive tort of civil conspiracy. Pope v. Rice, 2005 U.S. Dist. LEXIS 4011, at *41 (S.D.N.Y. Mar. 14, 2005); Alexander & Alexander Inc. v. Fritzen, 68 N.Y.2d 968, 969 (1986). Rather, a cause of action for civil conspiracy is only tenable where there is evidence of an underlying actionable tort. Id.; Missigman v. USI Northeast, Inc., 131 F. Supp. 2d 495, 517 (S.D.N.Y. 2001) ("Under New York law, a claim for civil conspiracy is available only if there is evidence of an underlying actionable tort."). Plaintiff has not adequately alleged the existence of an independent tort, and therefore, Plaintiff's claim for civil conspiracy must be dismissed. See Kirch v. Liberty Media Corp., 449 F.3d 388, 401 (2d Cir. 2006) (plaintiff "fails to state causes of action for either of the torts underlying the alleged conspiracy … it necessarily fails to state an actionable claim for civil conspiracy.").

The Court should also dismiss Plaintiff's civil conspiracy claim because she has not alleged the necessary elements to maintain such a claim. Plaintiff must demonstrate the primary tort, plus the following four elements: (1) agreement between two or more parties; (2) an overt

act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury.  World Wrestling Fed'n Entm't, Inc. v. Bozell, 142 F. Supp. 2d 514, 532 (S.D.N.Y. 2001).   The complaint "must allege the specific times, facts, and circumstances of the alleged conspiracy." Brownstone Inv. Group, LLC. v. Levey, 468 F. Supp. 2d 654, 661 (S.D.N.Y. 2007); see also Fisk v. Letterman, 424 F. Supp. 2d 670, 677 (S.D.N.Y. 2006) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy … are properly dismissed…" (citations and internal quotation marks omitted)).

Here, the Complaint doesn't properly allege even the first element of a claim of civil conspiracy – it lacks any allegations of "an agreement" between any of the Defendants.  See Brownstone, 468 F. Supp. 2d at 661.  The allegations are similarly deficient with respect to the "specific times, facts, and circumstances of the alleged conspiracy." Id.  Plaintiff merely alleges that "Defendants conspired with the other(s) to participate in a common plan or design to commit the aforesaid tortuous acts.  Each of them acted tortiously, and one or more of the said person committed tort(s) in pursuance of the agreement or understanding."  ¶ 81.  Such conclusory, vague, and general allegations are insufficient to survive a motion to dismiss.  See Brownstone, 468 F. Supp. 2d at 661; Hunt v. Enzo Biochem, Inc., 471 F.Supp.2d 390, 408 (S.D.N.Y. 2006) (claims dismissed where complaint merely stated certain defendants "conspired with each other" and the other defendants).

## IX.

## PLAINTIFF'S CONCERTED ACTION CLAIM MUST BE DISMISSED

Like a civil conspiracy claim, a claim for concerted action must be dismissed "in the absence of an independent tort as a basis for liability." Brenner v. American Cyanamid Co., 732

N.Y.S.2d 799, 801 (4th Dep't 2001) (citing Small v. Lorillard Tobacco Co., Inc., 94 N.Y.2d 43,

57 (1999)); see also Am. Bldg. Maint. Co. v. ACME Prop. Servs., 2007 U.S. Dist. LEXIS 64051,

at *53 (N.D.N.Y. Aug. 29, 2007) ("When a cause of action alleges that each defendant has acted

in concert, there must be an independent tort to provide the basis for liability." (citation

omitted)).  Again, since Plaintiff has failed to adequately allege an independent tort, the cause of

action for concerted action must be dismissed.

In any event, Plaintiff has not properly pled a claim for concerted action. The elements of

concerted action liability are "(1) an express or tacit agreement to participate in a common plan

or design to commit a tortious act, (2) tortious conduct by each defendant, and (3) the

commission by one of the defendants, in pursuance of the agreement, of an act that constitutes a

tort."  Pittman by Pittman v. Grayson, 149 F.3d 111, 122 (2d Cir. 1998) (citations and internal

quotation marks omitted).   Here, Plaintiff merely alleges in conclusory fashion that "Defendants

had an agreement or understanding between themselves, whether express or tacit, to participate

in a common plan or design to commit the aforesaid tortuous acts.  Each person acted tortiously,

and committed a tort in pursuance of the said agreement or understanding."  ¶ 78.  Plaintiff fails

to set forth any factual allegations to demonstrate "an agreement" between each of the

Defendants to commit a tortious act, and likewise neglects to plead the remaining two elements.

See Tuosto v. Philip Morris USA Inc., 2007 WL 2398507, at *10 (S.D.N.Y. Aug. 21, 2007).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the First, Third, Fourth, Fifth,

Sixth, Seventh, and Eighth Causes of Action should be granted in its entirety.

Plaintiff's Complaint should also be dismissed pursuant to Fed. R. Civ. P. 12(b)(7) for

failure to join a necessary party under Fed. R. Civ. P. 19.  Specifically, plaintiff failed to join the

vendor with whom plaintiff dealt, Universal Merchant Services. MBF has an arms-length

business relationship with hundreds of independent sales organizations, including Universal,

which are independent sales organizations which provide businesses with credit card or check

reading equipment and the means to process credit card and checking transactions. Universal

dealt with plaintiff; MBF acted as the financing party in the lease of the equipment, in

accordance with Article 2A of the U.C.C. Remarkably, plaintiff has not named Universal as a

party. While Defendants believe that this action must be dismissed on this basis, to fully brief

the issue, discovery may be required, and defendants reserve the right to assert this defense if the

case is not dismissed at this time.

Similarly, defendants believe that plaintiff fails to state a claim under the New York

Insurance Law, and that, as a matter of law, plaintiff's Insurance Law claim must be dismissed.

Here too, some discovery, or matters beyond the record may be required, and Defendants reserve

the right to assert this defense at a later time.

Dated:    New York, New York
          October 5, 2007

                                    MOSES & SINGER LLP
                                    Attorneys for Defendants

                                    By:    ____/s/ Abraham Skoff_____
                                           Abraham Skoff (AS-5330)
                                           Jayson Glassman (JG-4773)

                                    The Chrysler Building
                                    405 Lexington Avenue
                                    New York, New York  10174
                                    Tel. 212-554-7800
                                    Fax 212-554-7700
                                    askoff@mosessinger.com
                                    jglassman@mosessinger.com

# INDEX OF UNREPORTED CASES

1. <u>DVI Financial Services, Inc. v. Cardio-Pulmonary Complex, LLC.</u>, Index No. 600065/01, Slip Copy (Sup. Ct. N.Y. County Dec. 31, 2001)

2. <u>Pludeman, et al v Northern Leasing Services Inc.</u>, Index No. 04/101059, Slip Copy (Heitler, J.), (Sup. Ct. N.Y. County, April 7, 2005)

<u>DVI Financial Services, Inc. v. Cardio-Pulmonary Complex, LLC.</u>, Index No. 600065/01, Slip Copy (Sup. Ct. N.Y. County Dec. 31, 2001)

**SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY**

PRESENT: _Cahn_____    PART _49m_

_____
                    *Justice*

DVI Financial Services, Inc.)

         -v-

Cardio-Pulmonary Complex

INDEX NO. _60006S/01_

MOTION DATE _9/3/02_

MOTION SEQ. NO. _002_

MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

| | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | _____ |
| Answering Affidavits — Exhibits _____ | _____ |
| Replying Affidavits _____ | _____ |

**Cross-Motion:**  ☐ Yes  ☐ No

Upon the foregoing papers, it is ordered that this motion

*FILED*
*FEB 24 2003*
*NEW YORK*
*COUNTY CLERKS OFFICE*

MOTION IS DECIDED IN ACCORDANCE
WITH ACCOMPANYING MEMORANDUM
DECISION IN MOTION SEQUENCE . . . . .

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE

Dated: ___2  21  03_____    _____
                                                    *J.S.C.*

Check one:  ☐ **FINAL DISPOSITION**  ☑ **NON-FINAL DISPOSITION**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:        I.A.S.  PART 49
-------------------------------------------------------------------X
DVI FINANCIAL SERVICES, INC.,

                                      Plaintiff,

         -against-                                          Index No. 600065/01

CARDIO PULMONARY COMPLEX, LLC, PERRY
FRANKEL, ROSEMARY WEINBLATT, and
BLOCKWELL FUNDING CORP.,

                                      Defendants.
-------------------------------------------------------------------X

**HERMAN CAHN, J:**

      Plaintiff moves for partial summary judgment, CPLR 3212.  Defendant Blockwell

Funding Corp. (Blockwell) cross moves for summary judgment dismissing the complaint and the

cross-claims asserted against it.

      Plaintiff DVI Financial Services Inc. (DVI) brings this action to recover amounts due

under a finance lease for medical equipment and on a related personal guarantee.  DVI also

asserts causes of action against the broker that arranged the lease financing, defendant Blockwell.

      Defendant Cardio Pulmonary Complex, LLC (CPC), was formed in 1997 by defendants

Dr. Perry Frankel, a cardiologist, and Rosemary Weinblatt, a nurse, as a cardiopulmonary

rehabilitation and testing center (together the CPC defendants).  Although other investors were

involved, Frankel and Weinblatt were the majority shareholders.  On January 27, 1998,

Blockwell and CPC entered into an equipment lease (the Lease), pursuant to which Blockwell

agreed to purchase and  lease various pieces of new medical and related equipment to CPC.

DVI was to finance the purchase.  In connection with the Lease, defendants Frankel and

Weinblatt executed an unconditional guarantee (the Guarantee) of all the obligations and

liabilities of CPC under the Lease.

Under Section 4 of the Lease, CPC acknowledged and agreed that the Lease is a statutory finance lease under Article 2A of the Uniform Commercial Code, and that CPC had selected both the equipment and the supplier from which it had been purchased.

On May 5, 1998, the equipment was delivered to, and accepted by, CPC. On the same day, Blockwell assigned its interest in the equipment and the Lease to DVI. Thereafter, on November 19, 1999 Blockwell assigned the guarantees to DVI.

The Lease required CPC to make monthly rental payments of $9,399.43 for 63 months, and to remit $28,198.29, plus tax, upon signing, to be applied to the first and last two rental payments. There is no dispute that CPC defaulted on all sums due under the Lease from April 5, 1999 and thereafter.

In January 2000, CPC contacted DVI to notify it that defendants had entered into negotiations to vacate the existing premises, and wished to discuss the disposition of the equipment. The CPC defendants allege that DVI's agents represented that they could better sell and dispose of the equipment, and that such a disposition would serve to reduce or eliminate the defendants' obligations. Accordingly, on February 14, 2000, DVI repossessed the equipment.

DVI alleges that it did not retake possession of certain of the equipment, and that it does not have any information regarding equipment which was not located at CPC's premises. DVI further alleges that it has attempted to sell the repossessed equipment for more than nine months, but that as of December 2000, it had sold only some of the repossessed equipment for $7,894.74.

In January 2001, DVI commenced the within action against CPC, Frankel and Weinblatt, alleging breach of the Lease and conversion. DVI seeks damages specified in the Lease, or

2

alternatively, those provided by UCC § 2-A-528(1). Damages specified under the Lease include: (i) amounts past due under the terms of the Lease, plus interest and late fees: (ii) the present discounted value of all installments due under the Lease: (iii) all taxes payable with respect to the equipment; (iv) the costs of repossession; and (v) DVI's attorney's fees.

Pursuant to UCC § 2-A-528, a lessor's damages for nonpayment on the part of the lessee are:

> (a) accrued and unpaid rent as of the date of default ... if the lessee has taken possession of the goods as of the date the lessor repossesses the goods or an earlier date on which the lessee makes a tender of the goods to the lessor, (b) the present value as of the date determined under clause (a) of the total rent for the then remaining lease term of the original lease agreement minus the present value as of the same date of the market rent at the place where the goods are located computed for the same lease term, and (c) any incidental damages allowed under Section 2-A-530, less expenses saved in consequence of the lessee's default.

DVI contends that the market value of the equipment is not readily ascertainable, and, in any event, certain pieces of the equipment were never repossessed. As to those items, DVI seeks the full rental value as damages.

The CPC defendants counterclaimed against DVI alleging that DVI failed to mitigate its damages by improperly disposing of the equipment (first counterclaim), that the Lease transaction was usurious (second counterclaim) and for attorneys fees (third counterclaim). The CPC defendants first and second counterclaims were dismissed by order of this court, dated December 31, 2001.

In October 2001, defendant Weinblatt alleged at a deposition that Bruce Bernstein, an employee of Blockwell, induced CPC and the guarantors to execute the Lease and the Guarantee

3

before equipment schedules were attached to these documents, and before monthly payment

amounts and other terms had actually been written into these documents. Weinblatt also testified

that Blockwell had included equipment in the Lease schedule that was leased by another doctor

who worked at CPC's premises, thereby double-billing CPC for the same piece of equipment. In

her deposition testimony, Weinblatt stated that:

> Blockwell Funding lied to us * * * They told us that they were
> going to get –give us patients and connect us with insurance
> companies. And every time – and that we didn't need to work
> about our leases and that there would be no problem with taking
> this equipment and putting it into another – God forbid, and the
> intentions was always that the Center would do well and we were
> on that road to doing well. And they said. "Don't ever worry about
> your leases because we've got it handled because we could take
> this equipment. If you ever couldn't handle any piece of
> equipment, we could take it out of your center and put it into
> another center and you wouldn't worry about the lease payments,
> we would have somebody buy it."

In January 2002, DVI served a supplemental summons and amended complaint, adding

Blockwell as a defendant. As against Blockwell, DVI asserts claims for breach of contract (fifth

cause of action), breach of implied covenant of good faith and fair dealing (sixth cause of action),

and fraud (seventh cause of action), based upon Weinblatt's deposition testimony.

Blockwell answered and counterclaimed against DVI for contractual indemnification

(first counterclaim), conversion of certain equipment repossessed by DVI which was owned by

Blockwell (second counterclaim). Blockwell also cross-claimed against the CPC defendants for

contribution and/or indemnification (first cross-claim) and contractual indemnification, based

upon the Lease and the guarantee (second cross-claim).

Thereafter, in February 2002, the CPC defendants cross-claimed against Blockwell for

4

indemnification based upon Blockwell's improper actions (first cross-claim) and fraud in the inducement (second cross-claim).

In its cross-motion, Blockwell supports DVI's motion for summary judgment against the CPC defendants, but seeks to dismiss the claims asserted against it. As to the allegations regarding Bernstein, Blockwell contends that Bernstein is not an employee of Blockwell, but rather an independent contractor. Although Bernstein has been subpoenaed to testify, he has not appeared.

Summary judgment on a finance lease is properly granted upon proof of an executed lease, receipt of the equipment and nonpayment (See <u>Canon Financial Services, Inc. v Medico Stationery Service, Inc.</u>, ___AD2d ___, 751 NYS2d 194 [1st Dept 2002]). The CPC defendants argue that they were required to sign the lease in blank as a condition to obtaining financing, and that through the efforts of Blockwell, Bernstein and DVI, CPC became committed to acquire far more expensive equipment than the CPC defendants had anticipated, and that they were thus required to make payments for far more than they had expected.

This is not a sufficient defense to the within action. It is uncontroverted that the CPC defendants had control over which pieces of equipment they ordered. According to deposition testimony of Jeffrey Logel, the controller of CPC, Weinblatt determined which pieces of equipment to order (Logel EBT at 17:5-7). Weinblatt testified that she and Frankel were both responsible for the determination as to which equipment was ordered (Weinblatt EBT at 19: 21-23). In any event, Weinblatt also testified at her deposition that CPC had accountants working on the Lease (Weinblatt EBT at 26: 6-8).

Further, the CPC defendants do not deny that CPC retained the equipment and made

5

payments on the Lease for thirteen months before defaulting.  The retention of the equipment

constitutes acceptance of the equipment under N.Y. UCC § 2-A-515 .  N.Y. UCC § 2-A-407

provides that upon acceptance of the goods, "a lessee's promises under the lease contract become

irrevocable and independent * * * "   As to the CPC defendants' contention that certain

equipment, not ordered by them, was added to the lease schedule, this is a matter which needs to

be resolved, but does not affect the CPC defendants' liability on the Lease.

    As to the Guarantee executed by Frankel, and Weinblatt, that document provides

> NOW THEREFORE, in order to induce Lessor to enter into the
> Lease, Guarantor, jointly and severally, unconditionally guaranties
> the faithful and full performance by Lessee of all terms and
> conditions of the Lease.  In the event of default by Lessee, or
> failure to faithfully perform all of the terms or conditions required
> of Lessee under the Lease, or in the event of failure of Lessee to
> make any or all payments of money required of it under the Lease,
> Guarantor unconditionally promises to pay to Lessor * * * all sums
> at any time due or unpaid under the Lease, plus costs of collection,
> including reasonable attorney fees * * *

Thus, Frankel and Weinblatt agreed to pay "all sums at any time due or unpaid under the Lease."

Frankel and Weinblatt argue that the Guarantee is invalid because it does not specify a dollar

amount for which they may be held liable.  Even if a guarantee it is incomplete when signed,

where the guarantee is later completed and delivered with the guarantor's authorization, it is

valid (Kornfeld v NRX Technologies, Inc., 62 NY2d 686 [1984]). Here, Frankel and Weinblatt

were principals of CPC and had knowledge of, and control over, the items on the Lease which

they guaranteed  (c.f., Bellevue Builders Supply Inc. v Belmonte, 271 AD2d 849 [3rd Dept

2000]).  Under these circumstances Frankel and Weinblatt are liable on their Guarantee

(Kornfeld v NRX Technologies, Inc., supra).  Given this determination, the CPC defendants

counterclaim for attorneys fees is dismissed.

As to the CPC defendants' cross-claims against Blockwell for indemnification and fraud, given that the CPC defendants had their own controller and accountant, and that they had the ability to investigate any information regarding the equipment they ordered, the CPC defendants' alleged reliance on Blockwell, and their claim that they were somehow pressured into buying more expensive equipment than they needed, is plainly without merit. Nor are the Blockwell's alleged reassurances regarding the potential disposition of the equipment, actionable, as these are mere predictions of future events and cannot form the basis for a fraud cause of action (SRG Partners v Asch, 270 AD2d 4 [1st Dept 2000]).

Inasmuch as the CPC defendants have not raised viable defenses to their liability on the Lease and Guarantee, DVI's claims against Blockwell, which are based upon the CPC defendants' potential defenses, are moot. Accordingly, DVI's claims against Blockwell for breach of contract, breach of the covenant of good faith and fair dealing, and fraud are dismissed. Similarly, having determined that Blockwell is not liable to DVI, Blockwell's cross-claims against the CPC defendants for contribution and/or indemnification and contractual indemnification are dismissed. Blockwell's first counterclaim against DVI, for contractual indemnification, is dismissed.

Accordingly, based upon the foregoing it is

ORDERED that DVI Financial Services Inc.'s motion for partial summary judgment is granted only to the extent that defendant Cardio Pulmonary Complex,. LLC is found liable for amounts due pursuant to the Lease agreement between the parties; that the defendants Perry Frankel and Rosemary Weinblatt are found liable on the Guarantee signed by them; and that the

7

CPC defendants third counterclaim for attorneys fees is dismissed; and it is further

ORDERED that defendant Blockwell Funding Corp.'s cross motion for summary judgment dismissing the complaint and the cross-claims asserted against it is granted; and it further

ORDERED that the following issues are referred to a Special Referee to hear and report with recommendations, except that, in the event of and upon the filing of a stipulation of the parties. as permitted by CPLR 4317, the Special Referee, or another person designated by the parties to serve as referee, shall determine the aforesaid issues:

FIRST, whether there was any equipment listed on the lease schedule for which CPC may have been improperly billed, i.e., equipment which was not delivered to CPC;

SECOND, whether there was any equipment on the lease schedule which DVI did not repossess;

THIRD, the fair market value of the repossessed equipment on the date of its repossession;

FOURTH, the amount of damages due to DVI under the terms of the Lease, taking into account any potential value of the repossessed equipment;

FIFTH, whether DVI improperly repossessed any medical equipment which was owned by Blockwell, and if so, the fair market value of such equipment;

SIXTH, the reasonable value of the services rendered by plaintiff's attorneys herein;

and it is further

8

ORDERED that a copy of this order with notice of entry shall be served on the Clerk of

the Judicial Support Office (Room 311) to arrange a date of the reference to a Special Referee.


Dated: February 2[   ], 2003

ENTER:

_____
J.S.C.


9

<u>Pludeman, et al v Northern Leasing Services Inc.</u>, Index No. 04/101059, Slip Copy
(Heitler, J.), (Sup. Ct. N.Y. County, April 7, 2005)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:    IAS PART 30
-------------------------------------------------------------X
KEVIN PLUDEMAN, CHRIS HANZSEK
d/b/a HANZSEK AUDIO, SARA HUSH,
OZARK MOUNTAIN GRANITE & TILE CO.
and DENNIS E. LAUCHMAN, on behalf of
themselves and all others similarly situated,

                                   Plaintiffs,

        -against-

NORTHERN LEASING SYSTEMS, INC.,
JAY COHEN, STEVE BERNADONE,
RICH HAHN and SARA KRIEGER,

                                 Defendants.
-------------------------------------------------------------X

Index No. 101059/04

DECISION & ORDER

SHERRY KLEIN HEITLER, J.:

     The corporate defendant Northern Leasing Systems, Inc. ("N.S."), and the individual defendants Jay Cohen, Steve Bernadone, Rich Hahn and Sara Krieger, officers and the alleged management of NLS (hereinafter "individual defendants"), move for an order dismissing this action, pursuant to CPLR §3211 (a)(1), (3), (4), (5) and (7).

     The amended complaint alleges a purported class action against the defendant NLS and the individual defendants based upon the defendants' scheme to defraud the plaintiffs, generally small businesses, which entered into finance lease agreements with NSL for credit card point of sale terminals, and principals of those businesses, who personally guaranteed the lease agreements, by concealing material terms of the agreements unfavorable to the putative class.

     The amended complaint alleges causes of action for violations of the Federal Racketeering Statue, 18 U.S.C. §1962, the Electronic Funds Transfer Act, 15 U.S.C. §1692 and Fair Debt Collection Practices Act, 15 U.S.C. §1692 as well as causes of action for fraud, negligent misrepresentation, breach of implied covenant of good faith and fair dealing, breach of contract,

unjust enrichment and money had and received.

The defendant NLS previously moved for dismissal of the original complaint, which was resolved pursuant to a "so ordered" stipulation. The "so ordered" stipulation provided for, *inter alia*, the addition of Jane Hush, Ozark Mountain Granite & Tile Co. and Dennis E. Lauchman as plaintiffs; the addition of the individual defendants as defendants and leave to serve an amended complaint. The issue of whether plaintiff Challenger Deep Imports, Inc., a plaintiff in the original complaint, but not a plaintiff in the amended complaint, properly discontinued its claims remained an open issue subject to motion practice.

The amended complaint alleges that plaintiffs were mislead into believing that the four page lease agreement and personal guaranty was a single page document as both the lease's acceptance and personal guaranty was on the first page; that the first page of the document contains nothing incorporating the remaining three pages, which would alert the plaintiffs to the existence of additional pages; that the defendants' representatives or salespersons never discussed, mentioned or even referred to the remaining three pages; that they were manipulated into signing in a hurry; that the lease agreement was clipped in a clip-board making it appear that the agreement was a single page document; that they were not given a copy of the lease agreement at the time they signed and that they had to telephone a special number and request a copy.

The amended complaint, while conceding that at the bottom of the first page of the lease it reads "Page 1 of 4," alleges that such is tucked away in the far left corner in print size alleged to be "microprint."

The amended complaint further alleges that undisclosed pages concealed higher charges, indefinite automatic electronic deductions unless lessee gave a 60-day notice of cancellation, no

-2-

warranties from NLS, absolute obligation to pay, insurance obligations, late charges, attorneys' fees and expenses and a New York choice of forum.

Defendants' motion to dismiss includes copies of the leases and guarantees of the plaintiffs, which consist of a four-page document in booklet form, with all pages being attached and double-sided. On the bottom of page one, the signature page, in the left corner it states "Page 1 of 4." Additionally, in extremely small type, the paragraph, on the signature page, allowing automatic bank account deductions refers to paragraph 11, which is found on page three of the agreement. The lease agreements are the documentary evidence upon which defendants seek dismissal.

The defendants also contend that the terms of the finance lease agreements alleged to be burdensome, unfair and onerous are specifically allowed or imposed by Article 2A of the New York Uniform Commercial Code.

Prior to addressing the sufficiency of the various causes of action alleged in the amended complaint, consideration will be first be given to other issues raised by the motion papers. The first are the affidavits, submitted by plaintiffs in opposition to this dismissal motion, which included not only affidavits from the named plaintiffs but affidavits from five non-parties.

While the affidavits of the named plaintiffs are generally consistent with the allegations in the amended complaint, the affidavits of the non-parties attempt to allege an entirely new theory, with three of the non-party affiants raising issues of forgery. Mark Thomason alleges his signature was forged on the lease acceptance but not on the personal guarantee; Judson Ross alleges that it was impossible for him to execute the lease (and a personal guarantee), on behalf of Rapid Cash Advances, Inc., a Florida corporation, in which he is a principal, since, at the time he allegedly signed, he was in the Ukraine. The alleged forgery appears to have been by a former employee of

-3-

Rapid Cash Advances, Inc. Finally, Keri Kettler, who signed a lease agreement on behalf of Yodamo, Inc., a Washington corporation, and personally guaranteed the lease, alleges that the copy of the lease she obtained from defendants differed from the lease which she signed and copied, at the time of execution, in that the lease she signed was only one page with the left corner stating "Page 1" rather than "Page 1 of 4."

While generally a court should consider affidavits to remedy any defects in the pleading on a motion to dismiss for insufficiency, the affidavits of these non-party affiants shall not be considered as the allegations are inconsistent and contrary to the allegations in both the affidavits of the named plaintiffs and the amended complaint and is an improper attempt at repleading without court leave.

The next issue is defendants' argument that the amended complaint must be dismissed since plaintiffs are attempting to plead various causes of action when in reality their claims are for unconscionability with their exclusive remedy being recession under New York UCC §2-A-108. The law is well settled that the UCC does not displace common-law causes of action unless the particular Code provision expressly so provides (*Bank of Hawaii International Corp. v Marco Trading Corp.*, 261 AD2d 333 [1st Dept 1999], quoting *Hechter v New York Life Ins. Co.*, 46 NY2d 34, 39 [1978]). Since there is nothing in UCC §2-A-109 stating it replaces other available remedies, the plaintiffs are entitled to allege other available causes of action. Accordingly, dismissal based upon this argument is denied.

Defendants also contend that the class allegation contained in the amended complaint should be stricken as the alleged RICO and fraud claims are not generally suitable for class action treatment since issues of reliance and scienter would predominate over any purported proof of a common

-4-

scheme to defraud. Additionally, to the extent plaintiffs seek treble damages under the RICO statute such would not be recoverable in a class action, pursuant to CPLR 901(b).

While the legal positions asserted above could be relevant when plaintiffs move for an order of class action certification, these arguments are premature. Accordingly, that branch of defendants' motion seeking to strike the class action allegations is denied without prejudice to renew at the appropriate time.

As to the issue of whether Challenger Deep Imports, Inc., a named plaintiff in the original complaint, may discontinue it claims, without court approval and without notice to all members of the putative class, appears to be an issue of first impression. Plaintiffs maintain that CPLR 908 is applicable only when there is an attempt to discontinue the class action itself, rather than a claim of an individual class member. The purpose of CPLR 908 is to protect the putative class and to discourage collusive settlements of class actions. Clearly the plaintiff Challenger Deep Imports, Inc.'s attempt to discontinue its claim is not based upon settlement with the defendants as the defendants object to discontinuation based upon a perceived prejudice to them. Therefore, this court finds that a voluntary discontinuance would have been permissible, however, it finds, no evidence that plaintiff Challenger Deep Imports, Inc. ever served a notice of discontinuance in a timely manner as provided by CPLR 3217(a). Accordingly, this application is denied without prejudice to renew in the context of a motion seeking an order of discontinuance, pursuant to CPLR 3217(c). Although, the motion should be on notice to the named plaintiffs and defendants, notice need not be given to the putative plaintiff class.

Finally, with respect to that branch of defendants' motion seeking an order dismissing the individual claims of plaintiffs Kevin Pludeman and Sarah Jane Hush, pursuant to CPLR 3211(a)(4),

based upon prior pending actions, such is denied. The prior pending actions were brought by NLS against Pludeman and Hush, in New York City Civil Court, based upon the personal guarantees. The relief sought in this action differs from the relief available, by way of counterclaim, in the Civil Court action and includes additional parties.

This court shall now address each of the causes of action alleged in the amended complaint.

*RICO CLAIMS*

On a motion to dismiss, the factual allegations of the complaint must be accepted as true and the complaint must be liberally construed in the light most favorable to plaintiffs. (See, *Cron v. Hargro Fabrics, Inc.*, 91 N.Y.2d 362 [1997].)

The elements of a cause of action under RICO are as follows: (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an enterprise (7) the activities of which effect interstate or foreign commerce (*Moss v Morgan Stanley, Inc.*, 719 F2d 5, 17 [2d Cir 1983], *cert. denied*, 465 US 1025 [1984]).

The defendants seek dismissal of the RICO claims on the grounds that the alleged predicate acts of mail and wire fraud are not pleaded with particularity; that the distinctness requirement of an enterprise is lacking and that plaintiffs cannot show a RICO injury. The defendants also maintain that the individual plaintiffs, as guarantors, have no standing as they suffered only a derivative RICO injury and that with respect to plaintiffs Kevin Pludeman, Chris Hanzsek and Hanzsek Audio, any RICO claims they may have had are barred by the 4-year statute of limitations applicable to RICO claims.

-6-

With respect to the alleged mail fraud the amended complaint at paragraph 91 list 3 mailings to plaintiff Pludeman, 4 mailings to plaintiff Hanzsek and 1 mailing to plaintiff Hush.

The predicate acts sounding in fraud must comply with Fed. R. Civ. P. 9(b) which provides that "[i]n all averments of fraud ...the circumstances constituting the fraud...shall be stated with particularity." To specify fraud with particularity, a plaintiff must allege specifically the circumstances of the fraud, including the content of any alleged misrepresentation, the date and place of the misrepresentation and the identity of the speaker or writer (*Cohen v Koenig*, 25 F3d 1168, 1173 [2d Cir 1994]). The amended complaint fails to give the content of the items mailed, fails to state how the items were false and misleading and fails to allege who made the misrepresentations.

With respect to the alleged wire fraud, the amended complaint alleges a single telephone call to plaintiffs Pludeman, Hanzsek and Hush. There is however no allegation concerning the content of the alleged misleading statements and no allegations as to the identity of the speaker. The attorneys for the plaintiffs, in an attempt to remedy this defect, assert in their memorandum of law that the monthly automatic electronic deductions from plaintiffs' bank accounts constituted wire fraud.

The signature page of the lease agreements provided for monthly automatic electronic deductions from the lessee's bank account and the lessee was required to provide a voided check for purpose of commencing said deductions. Therefore, the wire transfers did not defraud the plaintiffs.

Accordingly, this court finds that the amended complaint fails to sufficiently allege the predicate act of mail and wire fraud (*SMS Marketing & Telecommunications, Inc. v H.G. Telecom, Inc.*, 949 F Supp 134 [ED NY 1996]).

-7-

Additionally, as to the individual defendants, the amended complaint fails to allege facts sufficient to create an inference that each individual defendant knew of and participated in the fraud. It is well established that the mere fact that an individual is affiliated with a defendant corporation fails to satisfy Rule 9(b)'s pleading requirements as to that individual (*Mills v Polar Molecular Corp.*, 12 F3d 1170, 1175 [2d Cir 1993]).

The amended complaint fails to allege that the enterprise is distinct from the NLS and the allegation that the corporate defendant associated with its own employees or agents carrying on the regular affairs of the corporation fails to satisfy the distinctness requirement (*Riverwoods Chappaqua Corp. v Marine Midland Bank*, 30 F3d 339, 343-44 [2d Cir 1994]).

Accordingly, that branch of defendants' motion seeking dismissal of all RICO claims is granted, including any RICO conspiracy claim as well, as dismissal of the substantive RICO claims mandates dismissal of any RICO conspiracy claim (*Purgess v Sharrock*, 806 F Supp 1102, 1110 [SD NY 1992]). As such, this court finds no need to address those branches of the defendants' motion seeking dismissal of some of the RICO claims based upon either lack of standing or as barred by the statute of limitations.

*EFTA*

Plaintiffs' causes of action based upon Electronic Funds Transfer Act, 15 U.S.C. §1692, are dismissed as plaintiffs offer no opposition to that branch of defendants' motion seeking their dismissal. Defendants are seeking attorneys' fees, and a reference as to the amount of said fees, arguing that such claims were alleged in bad faith and for the purpose of harassment. This court finds that these claims were not alleged in bad faith, therefore, it denies that branch of the defendants' application for attorneys' fees.

-8-

*FDCPA*

The amended complaint alleges a cause of action for violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, alleging defendants used deceptive means in an attempt to collect a debt from the plaintiff Pludeman by sending him a phony summons and verified complaint, when no legal action was commenced. While plaintiffs maintain that the FDCPA is applicable alleging that the claim against Pludeman was personal, since it is based upon his personal guaranty, 15 U.S.C. §1692a(5) defines the term "debt" as, "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes..."

Pludeman's alleged debt is not based upon a consumer's alleged obligation to pay money but rather a guaranty to pay an obligation of his business and therefore does not arise out of a transaction primarily for personal, family, or household purposes.

Accordingly, that branch of defendants' motion seeking dismissal of the cause of action alleging a violation of FDCPA is granted and the application for attorney fees is denied.

*FRAUD*

The elements of a cause of action for fraud include (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff.

CPLR 3016(b) provides that in a fraud action, the circumstances constituting the wrong shall be stated in detail.

As stated earlier, the amended complaint alleges that the plaintiffs were mislead into believing that the four-page lease agreement and personal guaranty was a single page document as

both the lease's acceptance and personal guaranty was on the first page; that the first page of the document contains nothing incorporating the remaining three pages, which would alert the plaintiffs to the existence of additional pages; that the defendants' representatives or salespersons never discussed, mentioned or even referred to the remaining three pages; that they were manipulated into signing in a hurry; that the lease agreement was clipped in a clip-board making it appear that the agreement was a single page document; that they were not given a copy of the lease agreement at the time they signed and that they had to telephone a special number and request a copy.

The law is well settled that a fraud may be committed by concealment as well as by positive falsehood or misrepresentation. While mere silence may constitute a fraud if there exists a legal duty to communicate to the other party, the allegations in the amended complaint go well beyond mere silence. In addition to failing to disclose material terms, the amended complaint alleges conduct which might lull a party into a false sense of security that the lease agreement and personal guaranty were a single page document, deliberately concealing the other three pages of the agreement. While it is true that the signature page, contrary to the amended complaint, does refer to paragraph 11, which is found on page three of the agreement, the type size could constitute evidence of intentional deception under such circumstances (*George v Lumbrazo*, 184 AD2d 1050 [4th Dept 1992]).

This court finds that the amended complaint sufficiently alleges a cause of action for common-law fraud as against the corporate defendant NLS, pursuant to CPLR 3016(b) as well as the individual defendants based upon the allegations that the individual defendants were officers of the corporation and that they participated in the fraud (*Finkel v D.H. Blair & Co.*, Inc., 213 AD2d 588 [2d Dept 1995]).

Also, contrary to defendants' position, this fraud claim is independent of any contract claim and where a party has fraudulently induced plaintiff to enter into a contract, it may be liable in tort.

Accordingly, that branch of defendants' motion seeking dismissal of the fraud cause of action is denied.

## NEGLIGENT MISREPRESENTATION

A cause of action for negligent misrepresentation requires that defendant: 1) had a duty to use reasonable care to impart correct information due to a special relationship between the parties; 2) that the information was false; and 3) that plaintiff reasonably relied on the information.

This action involves a commercial context and liability has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified (*Kimmell v Schaefer*, 89 NY2d 257 [1996]).

There is no allegation in the amended complaint of the existence of a special relationship, which requires a closer degree of trust than an ordinary business relationship, existing between the parties that would support a cause of action for negligent misrepresentation (*Fresh Direct, LLC v Blue Martini Software, Inc.*, 7 AD3d 487 [2nd Dept., 2004]).

Accordingly, that branch of defendants' motion dismissing this action for insufficiency is granted.

## PUNITIVE DAMAGES

This court finds that the amended complaint supports its demand for punitive damages as the allegations address more than a private wrong contending that defendants engaged in a course of conduct throughout the United States with such wanton dishonesty as to imply a criminal

-11-

indifference to civil obligations (*New York University v Continental Ins. Co.*, 87 NY2d 308 [1995]).

Accordingly, that branch of defendants' motion seeking to dismiss the demand for punitive damages is denied.

## BREACH OF CONTRACT

The amended complaint fails to allege a breach as there is no claim that defendants were actually in breach of any of the provisions of the four page lease. In fact, the amended complaint seeks to void the lease agreements based upon defendants' misleading plaintiffs into believing that the lease agreement was a single page document.

Accordingly, that branch of defendants' motion to dismiss the breach of contract claim is granted.

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

Every contract is subject to an implied covenant of good faith and fair dealing and the covenant is breached "when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement" (*Jaffe v Paramount Communications Inc.*, 222 AD2d 17, 22-23 [1st Dept 1996]).

The amended complaint does not allege what benefits plaintiffs were deprived of due to the breach of the covenant of good faith and fair dealing.

Accordingly, that branch of defendants' motion seeking to dismiss the cause of action for breach of the covenant of good faith and fair dealing is granted.

## MONEY HAD AND RECEIVED AND UNJUST ENRICHMENT

The amended complaint sufficiently states causes of action for money had and received and unjust enrichment.

Accordingly, that branch of defendants' motion seeking to dismiss these causes of action are denied.

## SUMMARY

The defendants' motion is granted to the extent of dismissing the causes of action alleged in the amended complaint for violations of RICO, EFTA and FDCPA, and for negligent misrepresentation, breach of contract and breach of implied covenant of good faith and fair dealing.

The plaintiff Challenger Deep Imports, Inc. shall remain as a plaintiff in this action pending a motion for leave to discontinue its claims, pursuant to CPLR 3217(b).

Any branch of the defendants' motion not specifically addressed, in this summary, is denied.

DATED:   APRIL 7 , 2005

SHERRY KLEIN HEITLER
J.S.C.

-13-

## Supreme Court of the State of New York
## County of New York

### Index No: 04/101059

Kevin Pludeman, Chris Hanzsek d/b/a Hanzsek Audio,
Sarah Jane Hush, Ozark Mountain Granite & Tile Co., and
Dennis E. Lauchman on behalf of themselves and all others similarly situated,

Plaintiffs

v.

Northern Leasing Systems, Inc., Jay Cohen,
Steve Bernardone, Rich Hahn, and Sara Krieger

Defendants

Notice of Entry

ENTERED IN DOCKET
4 / 25 / 05

### Chittur & Associates, P.C.
The Lincoln Building
60 East 42nd Street, Suite 1501
New York, NY 10165
Tel: (212) 370-0447
Attorneys for Plaintiffs and the Class