UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————— x

RHONDA GARNER D/B/A DÉCOR
SPECIALTIES, ON BEHALF OF HERSELF AND
ALL OTHERS SIMILARLY SITUATED,

                Plaintiffs,

          - against -

MBF LEASING, LLC, LINA KRAVIC, BRIAN
FITZGERALD, SAM BUONO, AND WILLIAM
HEALY,

                Defendants.

—————————————————————— x

07 CV 5607 (CM) (RLE)

**MEMORANDUM OF LAW IN SUPPORT OF
THE MOTION BY DEFENDANTS MBF LEASING, INC.,
LINA KRAVIC, BRIAN FITZGERALD AND SAM BUONO
TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**

MOSES & SINGER LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 554-7800

*Attorneys for Defendants MBF Leasing,
LLC, Lina Kravic, Brian Fitzgerald,
and Sam Buono*

Of Counsel:

Abraham Y. Skoff, Esq.
Robert D. Lillienstein, Esq.

682458v9   011082.0102

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS .................................................................................................... 1

ARGUMENT ................................................................................................................... 5

I.  THE LEASE IS VALID AND FULLY COMPLIES WITH ARTICLE 2A OF THE UNIFORM COMMERCIAL CODE, WHICH GOVERNS EQUIPMENT FINANCE LEASES ..................................................................................................................... 5

II.  PLAINTIFF'S CLAIMS UNDER THE STATE AND FEDERAL FAIR CREDIT REPORTING ACTS MUST BE DISMISSED .................................................................. 8

    A.  All Of Plaintiff's FCRA and NYFCRA Claims Must Be Dismissed Because Plaintiff Is Not A "Consumer" Within the Meaning of the FCRA ....................... 9

    B.  The First And Second Counts Must Also Be Dismissed on Additional Grounds, As MBF Had A Permissible Purpose For Obtaining Credit Reports ........ 11

    C.  Plaintiff's Claims Under 15 U.S.C. §1681s-2(b) Should Be Dismissed Because Plaintiff Has Not Adequately Alleged Damages ................................... 12

    D.  The Amended Complaint Does Not State Claims Under The FCRA Against the Individual Defendants ............................................................................... 13

III.  PLAINTIFF HAS NO PRIVATE RIGHT OF ACTION UNDER THE NEW YORK INSURANCE LAW ..................................................................................................... 14

IV.  PLAINTIFF'S BREACH OF CONTRACT CLAIMS MUST BE DISMISSED ................ 17

    A.  The Breach of Contract Claim Against MBF Should Be Dismissed ................... 17

    B.  The Aiding And Abetting Breach of Contract Claim Should Be Dismissed ........... 18

V.  PLAINTIFF'S QUASI-CONTRACT CLAIMS MUST BE DISMISSED .......................... 19

VI.  PLAINTIFF'S CIVIL CONSPIRACY CLAIM MUST BE DISMISSED .......................... 19

VII.  PLAINTIFF'S CONCERTED ACTION CLAIM MUST BE DISMISSED ...................... 21

VIII.  PLAINTIFF'S DEFAMATION CLAIM SHOULD BE DISMISSED ............................. 22

    A.  The Statements Allegedly Made Are Not Defamatory ..................................... 22

    B.  No Claim Against The Individual Defendants Has Been Stated .......................... 23

    C.  The Amended Complaint Fails To Plead Special Damages ................................. 23

CONCLUSION ................................................................................................................ 24

# TABLE OF AUTHORITIES

## FEDERAL CASES

Ali v. Vikar Management Ltd., 994 F. Supp. 492 (S.D.N.Y. 1998) ................................................. 8

America Building Maintenance Co. v. ACME Prop. Services, 515 F. Supp. 2d 298
(N.D.N.Y. 2007) .......................................................................................................... 21

Boothe v. TRW Credit Data, Inc., 523 F. Supp. 631 (S.D.N.Y. 1981) ........................................ 11

Brownstone Investment Group, LLC. v. Levey, 468 F. Supp. 2d 654 (S.D.N.Y. 2007) ........ 20, 21

Buccino v. Cont'l Assurance Co., 578 F. Supp. 1518 (S.D.N.Y. 1983) ................................. 15, 16

Certain Underwriters at Lloyd's v. Plasmanet Inc., 2002 U.S. Dist. LEXIS 14190 (S.D.N.Y.
Aug 1, 2002) ................................................................................................................ 14

Chauffeur's Training School, Inc. v. Spellings, 478 F.3d 117 (2nd Cir. 2007) ............................ 10

Fisk v. Letterman, 424 F. Supp. 2d 670 (S.D.N.Y. 2006) ............................................................ 20

Harris v. Allstate Insurance Co., 83 F. Supp. 2d 423 (S.D.N.Y. 2000) ....................................... 16

Harrison v. Metropolitan Life Insurance Co., 417 F. Supp. 2d 424 (S.D.N.Y. 2006) ................. 16

Hunt v. Enzo Biochem, Inc., 471 F. Supp. 2d 390 (S.D.N.Y. 2006) ............................................ 21

Ippolito v. WNS, Inc., 864 F.2d 440 (7th Cir. 1988) .............................................................. 10, 11

Johnson v. CGR Svcs., Inc., 2005 WL 991770 (N.D.Ill. April 7, 2005) ................................. 12, 13

Kirch v. Liberty Media Corp., 449 F.3d 388 (2d Cir. 2006) ........................................................ 20

Missigman v. USI Northeast, Inc., 131 F. Supp. 2d 495 (S.D.N.Y. 2001) ................................... 20

Lucchesi v. Experian Information Solutions, Inc., 2003 WL 21542317 (S.D.N.Y. July 7,
2003) ............................................................................................................................. 9

Lucchesi v. Experian Information Solutions, Inc., 226 F.R.D. 172 (S.D.N.Y. 2005) ................. 10

Matthews v. Worthen Bank & Trust Co., 741 F.2d 217 (8th Cir.1984) ....................................... 11

Northrop v. Hoffman of Simsbury, Inc., 134 F.3d 41 (2d Cir. 1997) ........................................... 13

Pittman by Pittman v. Grayson, 149 F.3d 111 (2d Cir. 1998) ..................................................... 21

Podell v. Citicorp Diners Club, Inc., 914 F. Supp. 1025 (S.D.N.Y. 1996) ................................... 10

Pope v. Rice, No. 04 Civ. 4171, 2005 U.S. Dist. LEXIS 4011 (S.D.N.Y. Mar. 14, 2005) ........... 19

Sparkes v. Morrison & Foerster Long-Term Disability Insurance Plan, 129 F. Supp. 2d 182
    (N.D.N.Y. 2001) .................................................................................................... 14, 15

Specialty Ins. v. Royal Indem. Co., No. 00-2482, 2002 U.S. Dist. LEXIS 12203, at *10-15
    (E.D. Pa. Mar. 25, 2002) ................................................................................................. 16

Stonehart v. Rosenthal, 2001 U.S. Dist. LEXIS 11566 (S.D.N.Y. Aug. 13, 2001) ....................... 8

Trikas v. Universal Card Services Corp., 351 F. Supp. 2d 37 (E.D.N.Y. 2005) ............................ 8

Tuosto v. Philip Morris USA Inc., No. 05 Civ. 9384, 2007 WL. 2398507 (S.D.N.Y. Aug.
    21, 2007) ........................................................................................................................... 22

Washington v. CSC Svcs. Inc., 199 F.3d 263 (5th Cir. 2000) ...................................................... 13

Wilson v. C & R Distributing, 2002 WL 1492212 (W.D. Tex. Apr. 12, 2002) ............................ 11

Woodell v. United Way of Dutchess County, 357 F. Supp. 2d 761 (S.D.N.Y. 2005) ................. 13

World Wrestling Federation Entertainment, Inc. v. Bozell, 142 F. Supp. 2d 514 (S.D.N.Y.
    2001) .................................................................................................................................. 20

Yeager v. TRW, Inc., 961 F. Supp. 161 (E.D. Tx. 1997) ............................................................. 11

## STATE CASES

Agristor Leasing v. Barlow, 180 A.D.2d 899 (3d Dep't 1992) ....................................................... 7

Alexander & Alexander of N.Y., Inc. v. Fritzen, 68 N.Y.2d 968 (1986) .............................. 19, 20

Bauer v. Mellon Mortg. Co., 178 Misc. 2d 234, 680 N.Y.S.2d 397 (Sup. Ct. N.Y. Co. 1998) .... 14

Bell v. Alden Owners, Inc., 299 A.D.2d 207 (1st Dep't 2002) ...................................................... 23

Brenner v. America Cyanamid Co., 288 A.D.2d 869 (4th Dep't 2001) ......................................... 21

Canon Finance Svcs., Inc. v. Medico Stationery Svc, Inc., 300 A.D.2d 66 (1st Dep't 2002) ......... 7

Cohn v. National Broad. Co., 50 N.Y.2d 885 (1980) .................................................................... 23

Direct Capital Corp. v. New ABI Inc., 13 Misc. 3d 1151 (Sup. Ct. Kings Co. 2006) ................... 7

EBC I, Inc. v. Goldman Sachs & Co., 5 N.Y.3d 11 (2005) .................................................... 17, 19

Fesseha v. TD Waterhouse Investor Svcs., Inc., 305 A.D.2d 268 (1st Dep't 2003) ................... 19

Foster v. Churchill, 87 N.Y.2d 744 (1996) ............................................................................. 23

Gillman v. Chase Manhattan Bank, 73 N.Y.2d 1 (1988) ............................................................ 8

Huskission v. Sentry Ins., 123 A.D.2d 832 (2d Dep't 1986) ...................................................... 16

Jaffe v. Paramount Communities, 222 A.D.2d 17 (1st Dep't 1996).............................................. 18

Klinger v. Allstate Insurance Co., 268 A.D.2d 562 (2d Dep't 2000) ............................................ 16

Lease Corp. of America, Inc. v. Resnick, 288 A.D.2d 533 (3d Dep't 2001).................................... 8

Lease Factor, Inc. v. Kemcy Model Agency, Inc., 201 A.D.2d 624 (2d Dep't 1994).................... 6

Lloyd v. Cardiology & Internal Medical of Long Island, PLLC, 16 Misc. 3d 1129, 847
    N.Y.S.2d 902, 2007 WL 2410853 (Sup. Ct. Nassau Co. Aug. 23, 2007).......................... 23

Lupinski v. Village of Ilion, 59 A.D.2d 1050 (4th Dep't 1977) .................................................... 18

Manfredonia v. Weiss, 37 A.D.3d 286, 286-87 (1st Dep't 2007).................................................. 23

Master Lease Corp. v. Manhattan Limousine, Ltd., 177 A.D.2d 85 (2d Dep't 1992).................... 7

Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Xerox Corp., 25 A.D.3d 309 (1st Dep't 2006)....... 17

Orix Credit Alliance v. Northeastern Tech Excavating Corp., 222 A.D.2d 796 (3d Dep't
    1995)......................................................................................................................... 7

Pac. Carlton Development Corp. v. 752 Pac., LLC, 17 Misc. 3d 1102, 851 N.Y.S.2d 59,
    2007 WL 2781874 (Sup. Ct. N.Y. Co. Sep 19, 2007)....................................................... 19

Polly Esther's S., Inc. v. Bogdanoff, 10 Misc. 3d 375, 386-89 (Sup. Ct. N.Y. Co. 2005) ........... 16

Rocanova v. Equitable Life Assurance Society of the United States, 83 N.Y.2d 603 (1994) ...... 16

Sage Group Associate, Inc. v. Dominion Textile (USA), Inc., 244 A.D.2d 281 (1st Dep't
    1997)........................................................................................................................ 19

Saunders v. AOL Time Warner, Inc., 18 A.D.3d 216 (1st Dep't 2005)........................................ 19

Schwartz v. Soc. of N.Y. Hospital, 199 A.D.2d 129 (1st Dep't 1993)........................................... 23

Small v. Lorillard Tobacco Co., Inc., 94 N.Y.2d 43 (1999) ......................................................... 21

Sud v. Sud, 211 A.D.2d 423 (1st Dep't 1995)...................................................................18

Uhr v. E. Greenbush Central Sch. District, 94 N.Y.2d 32, 698 N.Y.S.2d 609, 720 N.E.2d
    886 (1999) ...........................................................................................................15, 16

W. End Interiors, Ltd. v. Aim Construction & Contracting Corp., 286 A.D.2d 250 (1st Dep't
    2001).........................................................................................................................19

Walts v. First Union Mortg. Corp., 259 A.D.2d 322 (1st Dep't 1999)...........................16

Westminster Const. Co., Inc. v. Sherman, 160 A.D.2d 867 (2d Dep't 1990) ................19

## DOCKETED CASES

DVI Financial Svcs., Inc. v. Cardio-Pulmonary Complex, LLC., Index No. 600065/01 (Sup.
    Ct. N.Y. Co. Dec. 31, 2001).......................................................................................5

Northern Leasing Systems v. Kollars, Index No. 14350 (Samuels, J.) (N.Y.C. Civ. Ct. April
    4, 2008).......................................................................................................................7

Pludeman v Northern Leasing Svcs., Inc., Index No. 101059/04 (Heitler, J.) (Sup. Ct. N.Y.
    County April 7, 2005) .................................................................................................9

Pludeman v Northern Leasing Svcs., Inc., 40 A.D.3d 366, lv. to appeal granted, __ A.D. 3d
    ___ (1st Dep't Sept. 18, 2007) ..................................................................................9

## FEDERAL STATUTES

15 U.S.C. § 1681b ......................................................................................................10

15 U.S.C. § 1692 .........................................................................................................9

15 U.S.C. 1681b(a) ...................................................................................................12

15 U.S.C. §§ 1681b(a)(3)(A) ....................................................................................12

15 U.S.C. § 1681n .....................................................................................................10

15 U.S.C. § 1681o ......................................................................................................10

15 U.S.C. § 1681s-2(b).............................................................................................13

116 Cong. Rec. 36,572 (1970) ..................................................................................11

15 U.S.C. §1681b(a)(3)(F)(i) ...................................................................................12

Fed. R. Civ. P. 8 ........................................................................................ 13

Fed. R. Civ. P. 12(b) ................................................................................. 1

Fed. R. Civ. P. 12(b)(7) ............................................................................ 24

Fed. R. Civ. P. 19 ..................................................................................... 24

15 U.S.C. § 1681s-2(b) ............................................................................. 12

## STATE STATUTES

N.Y. Gen. Bus. L. § 380-b(a)(2) ............................................................... 12

N.Y. Gen. Bus. L. § 380-b(a)(3) ............................................................... 12

N.Y. Gen. Bus. L. §380-b ......................................................................... 12

N.Y. Ins. Law § 109(d) ............................................................................. 14

U.C.C. § 2A-102 ...................................................................................... 6

U.C.C. § 2A-103(1) .................................................................................. 6

U.C.C. § 2A-103(1)(g) .............................................................................. 6

U.C.C. § 2-A-103(g) ............................................................................. 5, 6

U.C.C. § 2A-109 ...................................................................................... 6

U.C.C. § 2A-§§ 209, 211(2), 212(1), 213, 219(1), 220(1) ........................ 6

U.C.C. § 2A-407 ...................................................................................... 6

U.C.C. § 2A-407(1) .................................................................................. 6

## MISCELLANEOUS

2 White & Summers, Uniform Commercial Code § 13-3(a) ....................... 6

### Preliminary Statement

Defendants MBF Leasing, LLC ("MBF"), and Lina Kravic, Brian Fitzgerald, and Sam

Buono ( the "Individual Defendants") (MBF and the Individual Defendants are collectively referred

to as the "Defendants"), move pursuant to Rule 12(b), Fed.R.Civ.P, for an order, dismissing the

First Amended Class Action Complaint, dated November 15, 2007 (the "Amended Complaint"), on

the grounds that the Amended Complaint fails to state a claim upon which relief may be granted.

### Statement of Facts

MBF is in the equipment lease finance business, specializing in lease financing of electronic

point of sale equipment, such as point of sale credit card swiping machines, as well as other types of

business equipment that sell for under $10,000.  Am. Compl. ¶¶3, 19, 25.[1]  MBF finances

equipment for small businesses through "equipment finance lease" contracts.  Id. ¶25.

MBF does not manufacture, sell or select the equipment leased by the lessee.  Ex. A, ¶3.[2]

Unaffiliated vendors, who typically meet with lessees to sell their services and equipment, discuss

various options, including a finance lease, such as MBF's.  MBF does not typically have dealings

with the lessee until after the lessee and vendor have reached an agreement as to the equipment and

the financing in connection therewith.  Both the equipment and the financing are selected by the

lessee, with the assistance of the vendor.

Plaintiff Rhonda Garner is a California business owner.  Am. Compl. ¶1.  On or about

January 5, 2005, she entered into a forty-eight (48) month finance lease agreement (the "Lease") for

a credit card point-of-sale terminal on behalf of her business, Décor Specialties.  See Ex. A.  The

---

[1]      References to "Am. Compl. ¶ __" are to paragraphs in the Amended Complaint
annexed as Exhibit "D" to the Declaration of Abraham Y. Skoff ("Skoff Decl."), sworn to on April
9, 2008 submitted herewith.

[2]      All references to Ex. "__" herein are to the Exhibits annexed to the Skoff Decl.
unless otherwise noted.

Lease is titled in large bold letters on its first page, "EQUIPMENT FINANCE LEASE." Ex. A, p.

1. Under the section "LEASE ACCEPTANCE" on Page 1, the Lease was signed and accepted on

behalf of Décor Specialties by Ms. Garner, who is identified as the President of Décor Specialties.

Id. at 1. In fact, Ms. Garner signed or initialed the Lease in three separate places. The Lease

acceptance reads, "Lessee has read and agrees to all terms and conditions contained in this

Equipment Finance Lease. THIS IS A NON-CANCELLABLE LEASE FOR THE FULL TERM

INDICATED HEREIN." Ex. A, p. 1.

Below the term "EQUIPMENT FINANCE LEASE", the Lease contains a section that reads

"ABOUT YOUR BUSINESS" and below that reads "Lessee (Corporate Business Name)." Ex. A,

p. 1. Décor Specialties is identified as a "Gift Store" on the line that reads "Type of Business." Ex.

A, p. 1.

A section on the first page of the Lease, entitled "ABOUT YOUR BANK," specifically

authorizes the Lessor to automatically deduct all payments due under the Lease from the Lessee's

bank account on a monthly basis. Ex. A, p. 1. Indeed, the Lease provides that automatic bank

deduction is "a fundamental condition to induce Lessor to accept this Lease" and provides further

that in the event of default by Lessee, Lessee authorizes the Lessor to deduct the full amount due

under the lease from Lessee's bank account. Ex. A, p. 1. To effectuate the automatic withdrawals

from her account, Plaintiff provided the name of her bank, the account number, and the bank's

routing number, which information is handwritten on the first page of the Lease. Plaintiff

separately initialed the bottom of the ABOUT YOUR BANK section. Just above her initials, the

Lease contains a merger clause in bold capital letters (Ex. A, p. 1), which provides:[3]

      THE TERMS OF THIS LEASE REPRESENT THE FINAL
      EXPRESSION OF THE AGREEMENT BETWEEN LESSOR AND

---

[3]    Paragraph 23 on page 4 of the Lease also contains an additional merger clause. Ex.
A, p. 4.

> LESSEE AND MAY NOT BE WAIVED ALTERED MODIFIED
> REVOKED OR RESCINDED AND ALL PRIOR AND/OR
> CONTEMPORANEOUS ORAL AND WRITTEN
> REPRESENTATIONS ARE MERGED HEREIN. ANY
> AGREEMENT TO MODIFY THIS LEASE MUST BE BY A
> SIGNED WRITING EXECUTED BY LESSOR AND LESSEE AND
> NO ATTEMPT AT ORAL MODIFICATION OR RESCISSION OF
> THIS LEASE OR ANY TERM HEREOF WILL BE BINDING. BY
> INITIALIZING THIS PROVISION LESSEE AGREES TO BE
> BOUND BY THE TERMS OF THIS LEASE. ... THIS LEASE
> AND ANY AND ALL MODIFICATIONS AND OTHER
> AGREEMENTS BETWEEN LESSOR AND LESSEE SHALL
> ONLY BE EFFECTIVE UPON EXECUTION BY AN OFFICER OF
> LESSOR.

Plaintiff also provided a voided check, together with her business license, to the vendor, Universal

Merchant Services ("UMS"), for the purpose of commencing automatic bank deductions. Ex. B.

The Lease is personally guaranteed by Plaintiff. Ex. A, p. 1. The PERSONAL

GUARANTY section, contained on the first page of the Lease, was separately signed by Plaintiff.

The guaranty is absolute and unconditional. Am. Compl. ¶ 31. It provides:

> To induce Lessor to make this Lease and purchase the Equipment for
> Lessee knowing that Lessor is relying on this Guaranty as a
> precondition to making this Lease, I INDIVIDUALLY,
> PERSONALLY, ABSOLUTELY AND UNCONDITIONALLY
> GUARANTY to Lessor (and any person or firm Lessor may transfer
> its interests to) all payments and other obligations owed by Lessee to
> Lessor under this Lease and any add-on leases, Equipment Schedules
> and future leases between Lessor and Lessee, including, but not
> limited to, Lessor's attorney's fees and legal costs incurred in
> enforcing this Lease. I will also pay all reasonable costs and fees
> incurred by Lessor in enforcing this Guaranty.

Following her signature on the Personal Guaranty appears Plaintiff's home address and social

security number. Ex. A, p. 1.

The Lease itself is on a single, long sheet of heavy paper, folded in the middle to create a

four sided booklet form. Ex. A. About an inch below the signature block, in the bottom left corner,

it states that it is "Page 1 of 4." Ex. A, p. 1. Contrary to Plaintiff's allegations, the print size for the

page numbers is as large as or larger than the print size on the rest of the page. Id.

The Lease also contains several other terms that are relevant to this motion. Paragraph 3 acknowledges that, as provided for in lease financing agreements under Article 2A of the UCC, the Lessor does not manufacture or select the equipment leased. Ex. A, ¶3. The Schedule of Payments on the first page of the lease provides that the base monthly lease payment does not include taxes. Ex. A, p. 1. Paragraph 7 of the Lease requires Lessee to remit all applicable taxes to MBF. Ex. A, ¶ 7. Paragraph 9 places the risk of loss of the equipment on the Lessee. Ex. A, ¶ 9. Paragraph 10 requires the Lessee to insure the equipment or to pay MBF a fee for a waiver of this provision. Ex. A, ¶ 10.

As is true in most lease finance transactions, Plaintiff dealt with an independent vendor, UMS, which is unrelated to MBF, and which marketed the credit card processing equipment and services that Plaintiff signed up for. After Plaintiff and the vendor agreed on the equipment that Plaintiff was to obtain and on lease financing, the vendor submitted a completed lease application package to MBF for credit approval.

Plaintiff did not name UMS as a party to this action, even though UMS – not the named Defendants – was the entity that dealt with the Plaintiff in selling both the equipment and the financing. Indeed, MBF is an equipment finance company and none of its employees was involved in selling the credit card equipment and services to the Plaintiff, or in suggesting that this transaction be lease financed. The Amended Complaint names four individuals as defendants, but these were all people who, at one time, were affiliated with MBF; the Amended Complaint fails to specify what any of them is alleged to have done.

The only allegations that address the Individual Defendants by name are found in paragraphs 4 and 5 of the Amended Complaint. In paragraph 4, Plaintiff alleges that Mr. Healy "was the President of an Illinois entity by the same name (MBF Leasing), and as such had business relationships with Defendant MBF." In Paragraph 5, Plaintiff alleges that Mr. Buono is the Vice

President of MBF, that Ms. Kravic is the operations manager, "who is primarily responsible for

MBF's originations and operations," and that Mr. Fitzgerald is the Executive Vice President of

MBF's business development.[4] There are no other allegations in the Amended Complaint that even

purport to state what any of the Individual Defendants did, other than the many allegations that

lump all of the defendants together without specifying what each one is alleged to have done.

Instead, Plaintiff asserts vaguely that the Individual Defendants' respective roles in the alleged

"misconduct" and "fraudulent scheme... are known only to themselves." Am. Compl. ¶ 6. There is

no allegation in the Amended Complaint that any of the named Individual Defendants had any

communication with Plaintiff before Plaintiff entered into the Lease.

**Argument**

**I.**

**THE LEASE IS VALID AND FULLY COMPLIES
WITH ARTICLE 2A OF THE UNIFORM COMMERCIAL
CODE, WHICH GOVERNS EQUIPMENT FINANCE LEASES**

The transaction giving rise to the claims sued upon is a standard equipment finance lease.

As explained by Justice Cahn in <u>DVI Financial Svcs., Inc. v. Cardio-Pulmonary Complex, LLC.</u>,

Index No. 600065/01, slip op. at 3 (Sup. Ct. N.Y. Co. Dec. 31, 2001) (copy attached) (internal

citation omitted):

> Under the UCC, a finance lease is a lease, in which the lessor does not
> select, manufacture, or supply the goods, but rather, the lessee
> negotiates directly with the supplier or manufacturer, and then
> arranges for the lessor to buy the goods, in order to lease them to the
> lessee (<u>see</u> UCC § 2-A-103[g]). The lessor is simply a source of
> financing, and is not accountable for any defects in the goods,
> although the lessee is entitled to the promises and warranties made by
> the entity supplying the goods. Moreover, the UCC provides a
> statutory "hell or high water" clause which makes a lessee's

---

[4]    Despite Plaintiff's characterization of the Individual Defendants as "masterminds" of an alleged "fraudulent scheme," the Amended Complaint, in contrast to the original Complaint, does not contain a cause of action for fraud. See Exs. C and D.

obligations under a finance lease irrevocable upon acceptance of the
goods, despite what happens to the goods afterwards.

See also U.C.C. § 2A-102, Official Comment, Purposes.

There are two types of finance leases, a consensual finance lease and a statutory finance lease pursuant to U.C.C. § 2A-103(1)(g). The lease at issue herein qualifies as both.

A consensual finance lease is a lease agreement that explicitly excludes the warranty liability of the lessor to the lessee and contains a "hell or high water" clause that requires the lessee to make lease payments even if the leased equipment is defective or destroyed. See 2 White & Summers, Uniform Commercial Code § 13-3(a); see also Lease Factor, Inc. v. Kemcy Model Agency, Inc., 201 A.D.2d 624, 625 (2d Dep't 1994) (upholding summary judgment against defendants that defaulted on lease even though leased equipment was defective where lease disclaimed all warranties and required lessee to make payments regardless of defects in equipment).

The statutory finance lease was created as a statutory "safe harbor" for those that feared that their lease agreements would not be interpreted as consensual finance leases. U.C.C. § 2A-103(g). Significantly, the laws that apply to ordinary leases are modified for statutory finance leases in twelve separate sections of Article 2A.[5] Section 2A-407 specifically authorizes the statutory "hell or high water" clause, providing that the lessee's obligation to pay rent is "irrevocable and independent" upon signing.[6] Section 2A-109 allows finance lessors to accelerate payments "at will." Many of these provisions, which are specifically authorized by Article 2A of the U.C.C., are the provisions about which Plaintiff complains.

---

[5]    U.C.C. § 2A-§§ 209, 211(2), 212(1), 213, 219(1), 220(1)(a), 221, 405(c), 406(1)(b), 407(1), 516(2) and 517(1)(a) and (2).

[6]    In contrast, the "hell or high water clause" does not apply to consumer leases. U.C.C. § 2A-407(1). A consumer lease is defined as a "lease primarily for personal, family, or household purposes." U.C.C. § 2A-103(1)(e).

Finance leases containing such terms comply with Article 2A of the U.C.C. and are fully

enforceable.  See, e.g., Canon Fin. Svcs., Inc. v. Medico Stationery Svc, Inc., 300 A.D.2d 66, 66-67

(1st Dep't 2002) (summary judgment granted "in view of the subject agreement's provisions that

plaintiff made no representations or warranties of any kind with respect to the copier, that plaintiff

was not the supplier, dealer or manufacturer of the copier, that any warranties made by the supplier,

dealer or manufacturer were not part of the subject agreement, and that defendants would look

solely to the supplier, dealer or manufacturer, and would continue to make the payments due under

the lease, even if the copier was for any reason unsatisfactory.  These provisions are typical of a

finance lease as defined in UCC 2-A-103(1) (g)…") (internal citation omitted); Orix Credit Alliance

v. Northeastern Tech Excavating Corp., 222 A.D.2d 796, 798 (3d Dep't 1995) (enforcing terms of

lease; dismissing claim of usury); Agristor Leasing v. Barlow, 180 A.D.2d 899, 901 (3d Dep't

1992) (same); Master Lease Corp. v. Manhattan Limousine, Ltd., 177 A.D.2d 85, 91 (2d Dep't

1992) (enforcing lease with disclaimer of warranties); Direct Capital Corp. v. New ABI Inc., 13

Misc. 3d 1151, 1164 (Sup. Ct. Kings Co. 2006); Northern Leasing Systems v. Kollars, Index No.

14350 (N.Y.C. Civ. Ct. April 4, 2008) (granting summary judgment in lieu of complaint to

equipment lessor and dismissing cross-motion based on fraud) (unpublished decision annexed).

Given the foregoing, Plaintiff's contentions that the terms of the Lease are "unconscionable"

(Am. Compl. ¶¶ 128, 133) are wholly without merit.  Similarly, Plaintiff's allegation that, at the

time the Lease was entered into, credit card terminals were available at a lower purchase price than

the aggregate payments over the lease term  (Am. Compl. ¶38), even if true, does not render the

Lease terms unenforceable.  Plaintiff was free to do business with any credit card company; she was

free to buy a credit card terminal or to finance it; she was free to finance through an equipment

finance lease, or in some other fashion.  What Plaintiff is not free to do is avoid the terms of the

Lease that she entered into, and under which she received the equipment, by now claiming the

Lease is a "bad bargain." See Lease Corp. of Am., Inc. v. Resnick, 288 A.D.2d 533, 535 (3d Dep't 2001) ("While defendants, with the benefit of hindsight, may have made a bad bargain, it is not the function of this Court to rewrite the parties' agreement.").

Finally, Plaintiff's contention that the last three (3) pages of the Lease and the terms and conditions thereon are "hidden" is wholly inconsistent with the physical layout of the Lease (which is one long piece of paper, folded in half to create four sides), and the fact that the Lease states "Page 1 of 4" on the first page, directly below the "Lease Acceptance" and "Personal Guaranty" provisions containing plaintiff's signatures. Ex. A, p. 1; see also Gillman v. Chase Manhattan Bank, 73 N.Y.2d 1, 12 (1988) (upholding security agreement where terms and conditions were printed on reverse side of signature page and were referenced directly above signature line). Further, the provision "ABOUT YOUR BANK" – also located on the first page of the Lease – specifically refers to Paragraph 11, located on page 3. See Ex. A., pp. 1, 3. This provision contains Plaintiff's initials which indicate that she read this provision before signing.

**II.**

**PLAINTIFF'S CLAIMS UNDER THE STATE[7] AND FEDERAL
FAIR CREDIT REPORTING ACTS MUST BE DISMISSED**

In this action, Plaintiff purports to assert four causes of action under the Fair Credit Reporting Act ("FCRA"), and four separate causes of action under the New York Fair Credit

---

[7]    New York's version of FCRA is patterned after its federal counterpart, and is interpreted to be consistent with the federal law. Accordingly, the dismissal of the federal FCRA claims requires that the parallel claims under NYFCRA be dismissed as well. Trikas v. Universal Card Servs. Corp., 351 F. Supp.2d 37, 46 (E.D.N.Y. 2005) ("The New York Fair Credit Reporting Act is contained in § 380 et seq. of the New York General Business Law. Since courts interpret the FCRA and related New York statute similarly, the points already discussed also warrant granting the Bank's summary judgment motion as to Plaintiff's state FCRA claims"), citing Ali v. Vikar Mgmt. Ltd., 994 F. Supp. 492, 498 (S.D.N.Y. 1998); Stonehart v. Rosenthal, 2001 U.S. Dist. LEXIS 11566, at *24-25 (S.D.N.Y. Aug. 13, 2001) (unpublished opinion annexed) ("courts have interpreted the federal and New York statutes similarly" and holding that "the Court's conclusions as to the FCRA also apply to the NYFCRA."). Accordingly, for the same reasons that Plaintiff's FCRA claims should be dismissed, their NYFRA claims should also be dismissed.

Reporting Act ("NYFCRA"). All of these claims must be dismissed because Plaintiff is a merchant,

not a consumer, and the subject reports were issued in connection with Plaintiff's business and her

guaranty of her business; this activity is not covered by FCRA.

**A.    All Of Plaintiff's FCRA and NYFCRA Claims Must Be Dismissed Because
       Plaintiff Is Not A "Consumer" Within the Meaning of the FCRA**

The FCRA is a consumer protection statute that regulates the collection, dissemination and

use of *consumer* credit information. Along with its companion statute, the Fair Debt Collection

Practices Act ("FDCPA"), 15 U.S.C. § 1692, it forms the basis of *consumer* credit rights. The law

is quite clear that these statutes apply to personal, household and consumer matters, not to business

transactions, or to the personal guarantee of a business obligation.[8]

It is uncontested that Plaintiff, a business owner (Am. Compl. ¶55), is a merchant. Indeed

the equipment financed in this matter was the credit card terminal and related material, which

Plaintiff used to charge her customers. As a merchant complaining of reports related to her business

lease and her personal guarantee, Plaintiff, as a matter of law, fails to state a claim under the FCRA.

In Lucchesi v. Experian Info. Solutions, Inc., 2003 WL 21542317, at *2 (S.D.N.Y. July 7, 2003)

(Kaplan, J.) ("Lucchesi I"), the plaintiff, an individual, asserted claims under FCRA for, among

other things, a personal credit report on himself that was issued in connection with a proposal that

---

[8]    Indeed, plaintiff's counsel is well aware that plaintiff's FCRA claim is improper, as
counsel's nearly identical claim, under the FDCPA, was dismissed on this exact ground in
Pludeman v Northern Leasing Svcs., Inc., Index No. 04/101059. The motion court in Pludeman
Court (Heitler, J.) determined that the claims in that case were "not based upon a consumer's
alleged obligation to pay money but rather a guaranty to pay an obligation of his business and
therefore does not arise out of a transaction primarily for personal, family, or household purposes."
Pludeman v. Northern Leasing Systems, Inc., Index No. 101059/04, slip op. at 9 (Sup. Ct. N.Y. Cty
April 25, 2005) (attached). "Pludeman's alleged debt is not based upon a consumer's alleged
obligation to pay money but rather a guaranty to pay an obligation of his business and therefore
does not arise out of a transaction primarily for personal, family, or household purposes." Id., aff'd
in part, rev'd in part, 40 A.D.3d 366, lv. to appeal granted, __ A.D. 3d ___ (1st Dep't Sept. 18,
2007) (unpublished order annexed).

he guarantee an equipment loan for his business.  The court dismissed all the claims and, with respect to the personal credit report, held:

> [A] report on a consumer for credit or insurance in connection with a business operated by the consumer is not a 'consumer report,' and the Act does not apply to it." 16 C.F.R., Part 600, App. cmt. 6(b).  In consequence, the complaint fails to state a claim under the FCRA upon which relief may be granted.  2003 WL 21542317, at *2.

Following the dismissal of the initial complaint, the plaintiff in Lucchesi I served an amended complaint, asserting causes of action under three provisions of FCRA: (i) 15 U.S.C. §1681b; (ii) 15 U.S.C. §1681n; and (iii) 15 U.S.C. §1681o.  See Lucchesi v. Experian Info. Solutions, Inc., 226 F.R.D. 172, 173 (S.D.N.Y. 2005) (Robinson, J.) ("Lucchesi II").  With respect to the claims concerning plaintiff's personal credit report, the Lucchesi II court adopted the opinion in Lucchesi I, and held that plaintiff's personal credit report "was issued in connection with a business operated by the consumer, and thus cannot form the basis of liability under the FCRA." Id. at 174 see also Podell v. Citicorp Diners Club, Inc., 914 F. Supp. 1025, 1036 (S.D.N.Y. 1996), aff'd, 112 F.3d 98 (2d Cir. 1997) (plaintiff had no cognizable FCRA claim for losses resulting from the use of his allegedly inaccurate credit report in connection with a commercial transaction).

Further, this Court should defer to the interpretation of the FCRA given by the Federal Trade Commission, the agency empowered to administer the FCRA.  See Chauffeur's Training School, Inc. v. Spellings, 478 F.3d 117, 124-25 (2nd Cir. 2007), citing Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 842-45, 104 S. Ct. 2778, 81 L. Ed.2d 694 (1984)) (court should defer to the statutory interpretation of an agency authorized to implement the statutory scheme if the interpretation is (1) not contrary to the clear intent of Congress and (2) reasonable.)  These recent New York decisions are not only consistent with the FTC's interpretation of FCRA, but, as recognized by the Seventh Circuit in Ippolito v. WNS, Inc., 864 F.2d 440 (7th Cir. 1988), they are expressly consistent with the intent of Congress:

> In enacting the FCRA, Congress sought to regulate the dissemination
> of information used for consumer purposes, not business purposes.
> See Matthews v. Worthen Bank & Trust Co., 741 F.2d 217, 219 (8th
> Cir.1984) (report on individual in connection with lease of facilities in
> shopping mall not covered by FCRA); see also Boothe v. TRW Credit
> Data, Inc., 523 F.Supp. 631, 633 (S.D.N.Y. 1981).   Representative
> Sullivan, one of the FCRA's sponsors in the House, stated:
>
> The purpose of the fair credit reporting bill is to protect consumers
> from inaccurate or arbitrary information in a consumer report, which
> is used as a factor in determining an individual's eligibility for credit,
> insurance or employment.   **It does not apply to reports utilized for
> business, commercial, or professional purposes**.  116 Cong. Rec.
> 36,572 (1970) (remarks of Representative Sullivan).

Ippolito, supra, 864 F.2d at 451-52 (emphasis added).

Other courts that have addressed the issue have held similarly.  See Yeager v. TRW, Inc.,

961 F. Supp. 161, 162 (E.D. Tx. 1997) (plaintiff's credit application for item for which he was

denied credit stated it was to be used for business and therefore credit report furnished in connection

with that application was not covered by FCRA); Matthews v. Worthen Bank & Trust Co., 741 F.2d

217, 219 (8th Cir. 1984) (credit report of a prospective lessee of commercial real estate not subject

to FCRA); Wilson v. C & R Distrib., 2002 WL 1492212, at *3 (W.D. Tex. Apr. 12, 2002) (use of a

credit report in connection with commercial lease application not covered by FCRA).

**B.     The First And Second Counts Must Also Be Dismissed on Additional Grounds, As
        MBF Had A Permissible Purpose For Obtaining Credit Reports**

Even assuming, *arguendo*, that Plaintiff's claims survive, notwithstanding that they were

obtained for a business purpose, the First and Second Counts of the Amended Complaint assert

claims against each of the Defendants for allegedly obtaining consumer reports without a

permissible purpose.  Those claims are clearly without merit, as the credit reports at issue were

admittedly obtained for the purpose of evaluating Ms. Garner's guaranty of a proposed equipment

lease for her business.  Am. Compl. ¶¶ 69-80, 94-105.  This is a permissible purpose under both

FCRA (15 U.S.C. §1681b[a][3][F][i])[9]and NY FCRA (Gen. Bus. L. §§ 380-b[a][3]).[10] Moreover,

Ms. Garner explicitly authorized MBF to obtain an "investigative credit report from a credit bureau

or a credit agency and to investigate the references or data obtained from Lessee", which is another

permissible purpose.[11] See 15 U.S.C. §§1681b(a)(3)(A); see also Gen. Bus. L. §§ 380-b(a)(2).

## C.     Plaintiff's Claims Under 15 U.S.C. §1681s-2(b) Should Be Dismissed Because Plaintiff Has Not Adequately Alleged Damages

The Third and Fourth Counts of the Amended Complaint purport to assert claims under

section 15 U.S.C. 1681s-2(b), for negligent (third count) and willful (fourth count) failure to

investigate and/or rectify an error in reporting.  To be viable, these claims require a plaintiff to plead

damages caused by the allegedly inaccurate reporting.  Johnson v. CGR Svcs., Inc., 2005 WL

991770 (N.D.Ill. April 7, 2005) (dismissing claim for failure to plead, with some specificity,

damages caused by defendants' alleged failure to comply with requirements of the FCRA).

In CGR Svcs., the court dismissed a complaint that merely alleged that plaintiff "'has

suffered damages as a result of Defendants' conduct' and requests actual damages, punitive

---

[9]      15 U.S.C. 1681b(a) provides, in pertinent part: "any consumer reporting agency may furnish a consumer report under the following circumstances and no other: … (2) In accordance with the written instructions of the consumer to whom it relates.  (3) To a person which it has reason to believe--(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer. . . (F) otherwise has a legitimate business need for the information--(i) in connection with a business transaction that is initiated by the consumer."

[10]      N.Y. Gen. Bus. L., §380-b provides, in pertinent part: "A consumer reporting agency may furnish a consumer report under the following circumstances and no other: . . .(2) In accordance with the written instructions of the consumer to whom it relates, or (3) To a person whom it has reason to believe intends to use the information (i) in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer, or . . . (v) to a person in connection with a business transaction involving the consumer where the user has a legitimate business need for such information . . .."

[11]      The authorization to obtain Ms. Garner's credit report is found on the first page of the Lease, in the box entitled LEASE ACCEPTANCE, *directly above her signature*. Ex. A, p. 1.

damages, declaratory relief, costs, and attorney's fees." Id. at *2.  In holding that those allegations were insufficient, the court noted:

> Federal Rule of Civil Procedure 8 allows for a liberal, but not
> nonexistent, pleading standard. The FCRA does not explicitly limit
> the "actual damages" recoverable under the statute and Plaintiff does
> not need to plead her damages with heightened particularity.
> However, the Complaint needs at least to give the other party some
> notice as to what her actual damages could possibly be.

Here, the Amended Complaint does not even make the conclusory allegation found to be insufficient in CGS Svcs.  There is no allegation that Ms. Garner was damaged as a result of any alleged violation of 15 U.S.C. 1681s-2(b).  The Third and Fourth Counts in the Amended Complaint must, therefore, be dismissed on this basis as well.  Id.[12]

**D.    The Amended Complaint Does Not State Claims
Under The FCRA Against the Individual Defendants**

A corporate officer may not be held individually liable under the FCRA unless he or she took action in his or her personal capacity.  Woodell v. United Way of Dutchess County, 357 F.Supp.2d 761, 774 (S.D.N.Y. 2005) (individual corporate officer may be held individually liable under FCRA "if it is found that he impermissibly obtained plaintiff's credit report for personal purposes, rather than merely in the ordinary course of his employment"); Northrop v. Hoffman of Simsbury, Inc., 134 F.3d 41, 49 (2d Cir. 1997) (whether an employee may be held liable under the FCRA "depends on whether the employee impermissibly obtained credit information for personal purposes, or merely in the ordinary course of employment.").

The Amended Complaint contains no allegation that anything done by the Individual Defendants was done to benefit themselves personally, or that their actions were taken outside the scope of their employment.  Indeed, there are no allegations that specify what any of the Individual

---

[12]    The failure to adequately allege damages further requires the dismissal of the cause of action because the FCRA does not provide a private right of action for injunctive relief.  See Washington v. CSC Svcs. Inc., 199 F.3d 263, 268 (5th Cir. 2000).

Defendants did at all. For these reasons, the FCRA and NYFCRA claims asserted against the

Individual Defendants must be dismissed.

**III.**

**PLAINTIFF HAS NO PRIVATE RIGHT OF ACTION
UNDER THE NEW YORK INSURANCE LAW**

The Ninth Count in the Amended Complaint purports to assert a claim under sections 1102

and 2102 of the New York Insurance Law. That claim should be dismissed because there is no

private right of action under that law.

Section 109(d) of Insurance Law, which addresses the penalties for violations of the

Insurance Law of which plaintiff complains, authorizes the Superintendent of Insurance to

commence a civil action for violation of the Insurance Law. Section 109(d) provides: "the

superintendent may maintain a civil action in the name of the people of the state to recover a

judgment for a money penalty imposed by law for the violation of any provision of this chapter."

N.Y. Ins. Law § 109(d). Because subsection (d) authorizes only the Superintendent of Insurance to

assert a cause of action based upon a violation of the Insurance Law, Courts have repeatedly

concluded that there is no private right of action under the law.

"Typically, courts do not construe the Insurance Law as providing for a private right of

action, in the absence of express language authorizing such enforcement." Certain Underwriters at

Lloyd's v. Plasmanet Inc., 2002 U.S. Dist. LEXIS 14190, at *9 (S.D.N.Y. Aug 1, 2002) (internal

quotation marks omitted) quoting Bauer v. Mellon Mortg. Co., 178 Misc. 2d 234, 237, 680

N.Y.S.2d 397 (Sup. Ct. N.Y. Co. 1998).

For example, in Sparkes v. Morrison & Foerster Long-Term Disability Ins. Plan, 129 F.

Supp. 2d 182 (N.D.N.Y. 2001), the court considered and rejected the argument that a private right

of action existed under section 4224 if the Insurance Law, which has "the effect of transferring or

spreading a policyholder's risk by prohibiting accident and health insurers from refusing to insure

persons within a particular class for discriminatory reasons, or from discriminatorily offering

policies on different terms and conditions than those available to policyholders generally." Id. at

187 (citations and internal quotation marks omitted).  Since this was seen as "a novel question under

New York law," in support of its argument against finding a private right of action, defendants

relied upon New York cases involving other sections of the Insurance Law, which held that there

was no private right of action under the particular sections at issue. Id.  In opposition, plaintiff cited

state and federal cases which involved claims brought under section 4224. Id.  The question of

whether a private right of action existed under 4224 was not raised in any of the cases cited by

either party. Id.

The Sparkes court stated that "[i]n the absence of any controlling authority, New York

courts apply a three-part inquiry to determine whether or not a private right of action should be

implied where the statute at issue is silent as to the existence of such a right.  This test is whether (1)

the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) recognition

of a private right of action would promote the legislative purpose; and (3) creation of such a right

would be consistent with the legislative scheme." Id. citing Uhr v. E. Greenbush Cent. Sch. Dist.,

94 N.Y.2d 32, 38, 698 N.Y.S.2d 609, 720 N.E.2d 886 (1999).

The Sparkes court concluded that no private right of action existed under section 4224, and

dismissed plaintiff's claim brought thereunder.  In doing so, the court reasoned that "while implying

a private right of action would likely further the legislative purpose of eliminating discrimination by

insurers, such an implied right of action would not be consistent with the legislative scheme.

Section 109 of the Insurance Law establishes the procedures for enforcement of various provisions

of the Insurance Law by the Superintendent of Insurance.  It does not provide for a private right of

action." Id. at 187-88, citing Buccino v. Cont'l Assur. Co., 578 F. Supp. 1518, 1526 (S.D.N.Y.

1983).  The court also noted that "[w]here the legislature intended that a particular provision of the

Insurance Law be enforced through a private right of action, it expressly so provided in the terms of

the statute." Id. at 188 (citing NY Ins. Law §§ 3420, 4226).

Other courts have similarly found that there is no private right of action under various

provisions of the Insurance Law.  See Harrison v. Metro. Life Ins. Co., 417 F. Supp. 2d 424, 432

(S.D.N.Y. 2006) (dismissing plaintiff's claim based upon section 3203(b)(1)(B) of the Insurance

Law where that section did not explicitly create a private right of action, because "implying a

private right of action would not be consistent with the legislative scheme, which establishes the

procedures for enforcement of various provisions of the Insurance Law by the Superintendent of

Insurance"); Harris v. Allstate Ins. Co., 83 F. Supp. 2d 423, 432 (S.D.N.Y. 2000) (holding that there

is no private right of action under section 2601 of the Insurance Law); Buccino v. Cont'l Assurance

Co., 578 F. Supp. 1518, 1526 (S.D.N.Y. 1983) (holding there is no private right of action under

section 5 of the Insurance Law); Rocanova v. Equitable Life Assurance Soc'y of the United States,

83 N.Y.2d 603, 614 (1994) (holding that there is no private right of action under section 2601 of the

Insurance Law); Klinger v. Allstate Ins. Co., 268 A.D.2d 562 (2d Dep't 2000) (holding that there is

no private right of action under section 3411 of the Insurance Law); Walts v. First Union Mortg.

Corp., 259 A.D.2d 322 (1st Dep't 1999) ("The IAS Court correctly ruled that no private right of

action exists under Insurance Law § 6503 (d), citing N.Y. Ins. Law § 109); Huskission v. Sentry

Ins., 123 A.D.2d 832, 833 (2d Dep't 1986) (holding that there is no private right of action under

section 3430 of the Insurance Law); Polly Esther's S., Inc. v. Bogdanoff, 10 Misc. 3d 375, 386-89

(Sup. Ct. N.Y. Co. 2005) (holding that there is no private right of action under section 2118).  See

also Specialty Ins. v. Royal Indem. Co., No. 00-2482, 2002 U.S. Dist. LEXIS 12203, at *10-15

(E.D. Pa. Mar. 25, 2002) (holding that there is no private right of action under Articles 23 and 24 of

NY Insurance Law); Certain Underwriters at Lloyd's v. Plasmanet Inc., No. 01 Civ. 6023, 2002

U.S. Dist. LEXIS 14190, at *9-10 (S.D.N.Y. Aug. 1, 2002) (holding that there is no private right of

action under section 27.17 of N.Y. Insurance Department Regulation 41); Feinblum v. Liberty Mut.

Ins. Co., No. 02 Civ. 5085, 2003 U.S. Dist. LEXIS 12266, at *9 (S.D.N.Y. July 16, 2003) (holding

that there is no private right of action under Regulation 35-D of the N.Y. State Insurance Code).

Similarly, New York Insurance Law sections 1102 and 2102 do not provide for a private

right of action, and there is no basis to imply such a right in the law. Accordingly, Plaintiff's Ninth

Count must be dismissed.

## IV.

### PLAINTIFF'S BREACH OF
### CONTRACT CLAIMS MUST BE DISMISSED

**A.     The Breach of Contract Claim Against MBF Should Be Dismissed**

The Amended Complaint purports to assert a breach of contract claim against MBF, but it

fails to identify any provisions of Ms. Garner's lease that were allegedly breached. The Amended

Complaint alleges only that: "By charging and collecting sums in excess of those specified in the

first page of the Form Lease, and by imposing undisclosed amounts towards alleged taxes and

insurance coverage, MBF breached the contracts at issue." Am. Compl. ¶ 125. This claim assumes

that only the first page of the four-page Lease is binding on Plaintiff, which is an absurd

proposition, particularly in light of the fact that the Amended Complaint does not even purport to

assert a claim for fraud or rescission. Because the Lease is concededly a four-page document, the

allegation that the charge for any amounts not set forth on the first page of the Lease is patently

absurd, and fails to state a claim for breach of contract. See EBC I, Inc. v. Goldman Sachs & Co., 5

N.Y.3d 11, 22-23 (2005) (affirming dismissal of plaintiff's breach of contract claims for failure to

adequately allege breach of contractual provisions or, alternatively, that defendant injured plaintiff's

right to receive benefits under the contract in breach of the implied covenant of good faith and fair

dealing); see also Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Xerox Corp., 25 A.D.3d 309, 310

(1st Dep't 2006) (claim for breach of duty of good faith and fair dealing properly dismissed as mere

substitute for plaintiff's non-viable contract claims) (citation omitted); see also Jaffe v. Paramount Communities, 222 A.D.2d 17, 22-23 (1st Dep't 1996) (plaintiff failed to allege any facts to demonstrate that defendant deprived him of any rights he had under the agreement ).

By its reference to "undisclosed amounts for insurance coverage" (Am. Compl. ¶125), the Amended Complaint appears to contend that MBF's collection of any amount for a liability damage waiver (LDW) constitutes a breach of the Lease. However, the right to impose a charge for LDW is specifically set forth in the paragraph 10 of the Lease, dealing with insurance. See Ex. A, ¶ 10. Under that provision, Ms. Garner had the option of providing evidence of insurance to MBF, which would have eliminated that charge. Because she failed to do so, the Lease authorized MBF to collect an amount for the LDW waiver. Collection of that amount, by automatic withdrawal from her bank account, cannot constitute a breach because the Lease expressly provides for it.

To the extent that the breach of contract claim is premised on the collection of sales taxes, that claim is also absurd in that the first page of the Lease clearly states, in two places, that Plaintiff is agreeing to pay the base monthly lease payment "plus applicable taxes." Ex. A, p. 1.

None of the allegations in the breach of contract claim demonstrate that Defendants failed to perform under the Lease and/or deprived Plaintiff of any rights she had under the Lease. See Sud v. Sud, 211 A.D.2d 423, 424 (1st Dep't 1995) (complaint must allege provisions of the contract "on which liability is predicated."); Lupinski v. Village of Ilion, 59 A.D.2d 1050, 1050-51 (4th Dep't 1977). New York law will not reconstruct a contract merely because one party is unhappy with its terms. Plaintiff's breach of contract claim is therefore deficient.

## B.    The Aiding And Abetting Breach of Contract Claim Should Be Dismissed

Plaintiff compounds the deficiencies of the Amended Complaint by naming corporate officers of MBF and alleging that they aided and abetted MBF's alleged breach of contract. This is apparently a novel claim, which finds no support in the case law. A corporate officer is not liable

for breach of a contract by his employer, even if the officer signed the contract in his or her

representative capacity. <u>Westminster Const. Co., Inc. v. Sherman</u>, 160 A.D.2d 867 (2d Dep't

1990); <u>Pac. Carlton Dev. Corp. v. 752 Pac., LLC</u>, 17 Misc. 3d 1102(A), 851 N.Y.S.2d 59, 2007 WL

2781874 (Sup. Ct. N.Y. Co. Sep 19, 2007). Here, there is not even an allegation that any of the

Individual Defendants signed the Lease in question. The claim of aiding and abetting a breach of

contract by the corporate defendant is, therefore, frivolous.

V.

## PLAINTIFF'S QUASI-CONTRACT CLAIMS MUST BE DISMISSED

Causes of action for unjust enrichment and money had and received, like other "quasi-

contract" theories, may not be maintained in the face of an express contract on the same subject

matter. <u>See</u> <u>Sage Group Assoc., Inc. v. Dominion Textile (USA), Inc.</u>, 244 A.D.2d 281, 282 (1st

Dep't 1997); <u>W. End Interiors, Ltd. v. Aim Constr. & Contracting Corp.</u>, 286 A.D.2d 250, 252 (1st

Dep't 2001); <u>Saunders v. AOL Time Warner, Inc.</u>, 18 A.D.3d 216, 217 (1st Dep't 2005) (existence

of enforceable contracts defeat unjust enrichment claims); <u>see</u> <u>also</u> <u>Fesseha v. TD Waterhouse

Investor Svcs., Inc.</u>, 305 A.D.2d 268, 269 (1st Dep't 2003) (money had and received does not lie

where express contract exists); <u>EBC I, Inc. v. Goldman Sachs & Co.</u>, 5 N.Y.3d at 23 ("existence of

a valid contract governing the subject matter generally precludes recovery in quasi contract for

events arising out of the same subject matter."). As a matter of law, the Lease governs and Plaintiff

may not avoid its terms and conditions by asserting quasi-contract theories of recovery and treating

the Lease as a nullity. Accordingly, the quasi-contract claims must be dismissed.

VI.

## PLAINTIFF'S CIVIL CONSPIRACY CLAIM MUST BE DISMISSED

New York law does not recognize a substantive tort of civil conspiracy. <u>Pope v. Rice</u>, No.

04 Civ. 4171, 2005 U.S. Dist. LEXIS 4011, at *41 (S.D.N.Y. Mar. 14, 2005); <u>Alexander &

Alexander of N.Y., Inc. v. Fritzen, 68 N.Y.2d 968, 969 (1986). Rather, a cause of action for civil conspiracy is only tenable where there is evidence of an underlying actionable tort. Id.; see also Missigman v. USI Northeast, Inc., 131 F. Supp. 2d 495, 517 (S.D.N.Y. 2001) ("Under New York law, a claim for civil conspiracy is available only if there is evidence of an underlying actionable tort."). Plaintiff has not adequately alleged the existence of an independent tort, and therefore, Plaintiff's claim for civil conspiracy must be dismissed. See Kirch v. Liberty Media Corp., 449 F.3d 388, 401 (2d Cir. 2006) (plaintiff "fails to state causes of action for either of the torts underlying the alleged conspiracy ... it necessarily fails to state an actionable claim for civil conspiracy.").

Nor has Plaintiff alleged the necessary elements to maintain such a conspiracy claim. Plaintiff must demonstrate the primary tort, plus the following four elements: (1) agreement between two or more parties; (2) overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury. World Wrestling Fed'n Entm't, Inc. v. Bozell, 142 F. Supp. 2d 514, 532 (S.D.N.Y. 2001). The Amended Complaint "must allege the specific times, facts, and circumstances of the alleged conspiracy." Brownstone Inv. Group, LLC. v. Levey, 468 F. Supp. 2d 654, 661 (S.D.N.Y. 2007); see also Fisk v. Letterman, 424 F. Supp. 2d 670, 677 (S.D.N.Y. 2006) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy ... are properly dismissed..." (citations and internal quotation marks omitted)). Here, the Amended Complaint does not properly allege even the first element of a claim of civil conspiracy – it lacks any allegations of "an agreement" between any of the Defendants. See Brownstone, 468 F. Supp. 2d at 661. The allegations are similarly deficient with respect to the "specific times, facts, and circumstances of the alleged conspiracy." Id. Plaintiff merely alleges that "Defendants conspired with the other(s) to participate in a common plan or design to commit the aforesaid tortious acts.

Each of them acted tortiously, and one or more of the said person committed tort(s) in pursuance of the agreement or understanding." Am. Compl. ¶ 139. Such conclusory, vague, and general allegations are insufficient to survive a motion to dismiss. See Brownstone, 468 F. Supp. 2d at 661; Hunt v. Enzo Biochem, Inc., 471 F.Supp.2d 390, 408 (S.D.N.Y. 2006) (claims dismissed where complaint merely stated certain defendants "conspired with each other" and the other defendants).

## VII.

## PLAINTIFF'S CONCERTED ACTION CLAIM MUST BE DISMISSED

Like a civil conspiracy claim, a claim for concerted action must be dismissed "in the absence of an independent tort as a basis for liability." Brenner v. Am. Cyanamid Co., 288 A.D.2d 869, 870 (4th Dep't 2001) (citing Small v. Lorillard Tobacco Co., Inc., 94 N.Y.2d 43, 57 (1999); see also Am. Bldg. Maint. Co. v. ACME Prop. Servs., 515 F.Supp.2d 298, 321 (N.D.N.Y. 2007) ("When a cause of action alleges that each defendant has acted in concert, there must be an independent tort to provide the basis for liability." (citation omitted)). Since Plaintiff has failed to adequately allege an independent tort, the claim for concerted action must be dismissed.

In any event, Plaintiff has not properly pled a claim for concerted action. The elements of concerted action liability are "(1) an express or tacit agreement to participate in a common plan or design to commit a tortious act, (2) tortious conduct by each defendant, and (3) the commission by one of the defendants, in pursuance of the agreement, of an act that constitutes a tort." Pittman by Pittman v. Grayson, 149 F.3d 111, 122 (2d Cir. 1998) (citations and internal quotation marks omitted). Here, Plaintiff merely alleges in conclusory fashion that: "Defendants had an agreement or understanding between themselves, whether express or tacit, to participate in a common plan or design to commit the aforesaid tortious acts. Each person acted tortiously, and committed a tort in pursuance of the said agreement or understanding." Am. Compl. ¶ 136. Plaintiff fails to set forth any factual allegations to demonstrate "an agreement" between each of the Defendants to commit a

tortious act, and likewise neglects to plead the remaining two elements. See Tuosto v. Philip Morris USA Inc., No. 05 Civ. 9384, 2007 WL 2398507, at *10 (S.D.N.Y. Aug. 21, 2007).

**VIII.**

**PLAINTIFF'S DEFAMATION CLAIM SHOULD BE DISMISSED**

**A.    The Statements Allegedly Made Are Not Defamatory**

The only allegations in the Amended Complaint concerning Defendants' communications with credit reporting agencies are contained in paragraphs 60 and 62 of the Amended Complaint, which state:

> a.    That Ms Garner had personally opened an account with Defendants in "February 2005;"
>
> b.    That Ms. Garner's personal account had a credit limit/original amount of $3,597;
>
> c.    That Ms. Garner's personal account was an "installment" loan for "48 months," with monthly payments due;
>
> d.    That Defendants had "charged off" $2,709 which Ms. Garner allegedly owed on account of 'Early termination/balance owing."
>
> e.    "Defendants . . . reported to Experian that they had charged off the sum of $2,870 as of September 2007." (internal quotation marks omitted.) (Am. Compl. ¶¶ 60, 62).

Ms. Garner's claim is really not that these statements are false; they clearly are not. Her somewhat convoluted claim is that because she claims that she was defrauded (though she no longer asserts a fraud claim in her Amended Complaint), neither the Lease nor her guaranty were ever enforceable. As a result, she claims that MBF never had the legal right to make any statements that are premised on the existence of an enforceable Lease and guaranty. That is significantly different than a claim that the statements were false when made. Even if this Court, *arguendo*, determines that the Lease is not enforceable, that would not change the fact that the statements were very much true at the time they were allegedly made.

Moreover, even if the statements were false, they are not defamatory because they do not "expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons." Foster v. Churchill, 87 N.Y.2d 744, 751 (1996), quoting Rinaldi v. Holt, Rinehart, & Winston, Inc., 42 N.Y.2d 369, 379 (1977); see also Manfredonia v. Weiss, 37 A.D.3d 286, 286-87 (1st Dep't 2007) (statement that did not subject plaintiff to public ridicule was not defamatory).  Courts will not strain to find defamation where none exists. Cohn v. Nat'l Broad. Co., 50 N.Y.2d 885, 887 (1980).  Giving Plaintiffs the benefit of all possible inferences, the statements complained of are simply not defamatory.

**B.     No Claim Against The Individual Defendants Has Been Stated**

The defamation claim should be dismissed as against the Individual Defendants because the Amended Complaint fails to allege that any of the Individual Defendants made a defamatory statement about Plaintiff.  The Amended Complaint simply states "Defendants maliciously defamed Ms. Garner . . . ." Am. Compl. ¶ 150.  Because the Amended Complaint fails to specify what each individual defendant allegedly said or did that was defamatory, it fails as a matter of law to state a cause of action for defamation as against the Individual Defendants.  See Schwartz v. Soc. of N.Y. Hosp., 199 A.D.2d 129, 130 (1st Dep't 1993) ("the bare allegation that these two defendants were acting in concert with defendant Savarese without any allegation of independent culpable behavior on their part was clearly insufficient to link them to the allegedly defamatory remarks.").

**C.     The Amended Complaint Fails To Plead Special Damages**

The defamation claim should also be dismissed because it fails to allege special damages, which is required in a case like this where defamation *per se* has not been alleged. Bell v. Alden Owners, Inc., 299 A.D.2d 207 (1st Dep't 2002), lv. denied, 100 N.Y.2d 506 (2003); Lloyd v. Cardiology & Internal Med. of Long Island, PLLC, 16 Misc. 3d 1129(A), 847 N.Y.S.2d 902, No. 006924/07, 2007 WL 2410853 (Sup. Ct. Nassau Co. Aug. 23, 2007).

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint should be granted in its entirety in favor of all Defendants.

Plaintiff's Amended Complaint should also be dismissed pursuant to Fed. R. Civ. P. 12(b)(7) for failure to join a necessary party under Fed. R. Civ. P. 19. Specifically, plaintiff failed to join the vendor with whom plaintiff dealt, UMS. MBF has an arms-length business relationship with hundreds of independent sales organizations, including UMS, which are independent sales organizations which provide businesses with credit card or check reading equipment and the means to process credit card and checking transactions. UMS dealt with plaintiff; MBF acted as the financing party in the lease of the equipment, in accordance with Article 2A of the U.C.C. Remarkably, plaintiff has not named UMS as a party. While Defendants believe that this action must be dismissed on this basis, to fully brief the issue, discovery may be required, and defendants reserve the right to assert this defense if the case is not dismissed at this time.

Dated:  New York, New York
        April 9, 2008

MOSES & SINGER LLP
*Attorneys for Defendants MBF Leasing, LLC,
and Lina Kravic, Brian Fitzgerald, and Sam
Buono*

By: _____
Abraham Y. Skoff, Esq. (AS-5330)
Robert D. Lillienstein, Esq. (RL-4585)
405 Lexington Avenue
New York, New York 10174
(212) 554-7800 (telephone)
(212) 554-7700 (facsimile)

# INDEX OF UNPUBLISHED DECISIONS AND ORDERS

DVI Financial Services, Inc. v. Cardio-Pulmonary Complex, LLC.,
Index No. 600065/01, Cahn, J. (Sup. Ct. N.Y. County Dec. 31, 2001)

Northern Leasing Systems v. Kollars,
Index No. 14350 (Samuels, J.) (N.Y.C. Civ. Ct. April 4, 2008)

Pludeman v. Northern Leasing Services, Inc.,
Index No. 04/101059, (Heitler, J.), (Sup. Ct. N.Y. County April 7, 2005)

Pludeman v. Northern Leasing Services, Inc.,
Index No. 04/101059, 40 A.D.3d 366, lv. to appeal granted, __ A.D. 3d ___ (1st Dep't
Sept. 18, 2007)

<u>DVI Financial Services, Inc. v. Cardio-Pulmonary Complex, LLC.</u>,
Index No. 600065/01, Cahn, J. (Sup. Ct. N.Y. County Dec. 31, 2001)

**SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY**

PRESENT: _Cahn_                                    PART _49m_
                        _Justice_

_DVI Financial Services, Inc._          INDEX NO. _600065/01_

                                         MOTION DATE _9/3/02_
- v -
                                         MOTION SEQ. NO. _002_

_Cardia-Pulmonary Complex_               MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

                                                    | PAPERS NUMBERED |

Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ...    _____

Answering Affidavits — Exhibits _____    _____

Replying Affidavits _____    _____

**Cross-Motion:** ☐ Yes  ☐ No

Upon the foregoing papers, it is ordered that this motion

**FILED**

FEB 24 2003

NEW YORK
COUNTY CLERK'S OFFICE

**MOTION IS DECIDED IN ACCORDANCE
WITH ACCOMPANYING MEMORANDUM
DECISION IN MOTION SEQUENCE . . . . . .**

Dated: _7  21  03_          _____
                                    J.S.C.

**Check one:** ☐ **FINAL DISPOSITION**   ☑ **NON-FINAL DISPOSITION**

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:        I.A.S.  PART 49
-----------------------------------------------------------------------X
DVI FINANCIAL SERVICES, INC.,

                                        Plaintiff,

            -against-                                          Index No. 600065/01

CARDIO PULMONARY COMPLEX, LLC, PERRY
FRANKEL, ROSEMARY WEINBLATT, and
BLOCKWELL FUNDING CORP.,

                                        Defendants.
-----------------------------------------------------------------------X

**HERMAN CAHN, J:**

        Plaintiff moves for partial summary judgment, CPLR 3212.  Defendant Blockwell

Funding Corp. (Blockwell) cross moves for summary judgment dismissing the complaint and the

cross-claims asserted against it.

        Plaintiff DVI Financial Services Inc. (DVI) brings this action to recover amounts due

under a finance lease for medical equipment and on a related personal guarantee.  DVI also

asserts causes of action against the broker that arranged the lease financing, defendant Blockwell.

        Defendant Cardio Pulmonary Complex, LLC (CPC), was formed in 1997 by defendants

Dr. Perry Frankel, a cardiologist, and Rosemary Weinblatt, a nurse, as a cardiopulmonary

rehabilitation and testing center (together the CPC defendants).  Although other investors were

involved, Frankel and Weinblatt were the majority shareholders.  On January 27, 1998,

Blockwell and CPC entered into an equipment lease (the Lease), pursuant to which Blockwell

agreed to purchase and  lease various pieces of new medical and related equipment to CPC.

DVI was to finance the purchase.  In connection with the Lease, defendants Frankel and

Weinblatt executed an unconditional guarantee (the Guarantee) of all the obligations and

liabilities of CPC under the Lease.

Under Section 4 of the Lease, CPC acknowledged and agreed that the Lease is a statutory finance lease under Article 2A of the Uniform Commercial Code, and that CPC had selected both the equipment and the supplier from which it had been purchased.

On May 5, 1998, the equipment was delivered to, and accepted by, CPC. On the same day, Blockwell assigned its interest in the equipment and the Lease to DVI. Thereafter, on November 19, 1999 Blockwell assigned the guarantees to DVI.

The Lease required CPC to make monthly rental payments of $9,399.43 for 63 months, and to remit $28,198.29, plus tax, upon signing, to be applied to the first and last two rental payments. There is no dispute that CPC defaulted on all sums due under the Lease from April 5, 1999 and thereafter.

In January 2000, CPC contacted DVI to notify it that defendants had entered into negotiations to vacate the existing premises, and wished to discuss the disposition of the equipment. The CPC defendants allege that DVI's agents represented that they could better sell and dispose of the equipment, and that such a disposition would serve to reduce or eliminate the defendants' obligations. Accordingly, on February 14, 2000, DVI repossessed the equipment.

DVI alleges that it did not retake possession of certain of the equipment, and that it does not have any information regarding equipment which was not located at CPC's premises. DVI further alleges that it has attempted to sell the repossessed equipment for more than nine months, but that as of December 2000, it had sold only some of the repossessed equipment for $7,894.74.

In January 2001, DVI commenced the within action against CPC, Frankel and Weinblatt, alleging breach of the Lease and conversion. DVI seeks damages specified in the Lease, or

2

alternatively, those provided by UCC § 2-A-528(1). Damages specified under the Lease include: (i) amounts past due under the terms of the Lease, plus interest and late fees: (ii) the present discounted value of all installments due under the Lease: (iii) all taxes payable with respect to the equipment; (iv) the costs of repossession; and (v) DVI's attorney's fees.

Pursuant to UCC § 2-A-528, a lessor's damages for nonpayment on the part of the lessee are:

> (a) accrued and unpaid rent as of the date of default ... if the lessee has taken possession of the goods as of the date the lessor repossesses the goods or an earlier date on which the lessee makes a tender of the goods to the lessor, (b) the present value as of the date determined under clause (a) of the total rent for the then remaining lease term of the original lease agreement minus the present value as of the same date of the market rent at the place where the goods are located computed for the same lease term, and (c) any incidental damages allowed under Section 2-A-530, less expenses saved in consequence of the lessee's default.

DVI contends that the market value of the equipment is not readily ascertainable, and, in any event, certain pieces of the equipment were never repossessed. As to those items, DVI seeks the full rental value as damages.

The CPC defendants counterclaimed against DVI alleging that DVI failed to mitigate its damages by improperly disposing of the equipment (first counterclaim), that the Lease transaction was usurious (second counterclaim) and for attorneys fees (third counterclaim). The CPC defendants first and second counterclaims were dismissed by order of this court, dated December 31, 2001.

In October 2001, defendant Weinblatt alleged at a deposition that Bruce Bernstein, an employee of Blockwell, induced CPC and the guarantors to execute the Lease and the Guarantee

before equipment schedules were attached to these documents, and before monthly payment

amounts and other terms had actually been written into these documents. Weinblatt also testified

that Blockwell had included equipment in the Lease schedule that was leased by another doctor

who worked at CPC's premises, thereby double-billing CPC for the same piece of equipment. In

her deposition testimony, Weinblatt stated that:

> Blockwell Funding lied to us * * * They told us that they were
> going to get –give us patients and connect us with insurance
> companies. And every time – and that we didn't need to work
> about our leases and that there would be no problem with taking
> this equipment and putting it into another – God forbid, and the
> intentions was always that the Center would do well and we were
> on that road to doing well. And they said. "Don't ever worry about
> your leases because we've got it handled because we could take
> this equipment. If you ever couldn't handle any piece of
> equipment, we could take it out of your center and put it into
> another center and you wouldn't worry about the lease payments,
> we would have somebody buy it."

In January 2002, DVI served a supplemental summons and amended complaint, adding

Blockwell as a defendant. As against Blockwell, DVI asserts claims for breach of contract (fifth

cause of action), breach of implied covenant of good faith and fair dealing (sixth cause of action),

and fraud (seventh cause of action), based upon Weinblatt's deposition testimony.

Blockwell answered and counterclaimed against DVI for contractual indemnification

(first counterclaim), conversion of certain equipment repossessed by DVI which was owned by

Blockwell (second counterclaim). Blockwell also cross-claimed against the CPC defendants for

contribution and/or indemnification (first cross-claim) and contractual indemnification, based

upon the Lease and the guarantee (second cross-claim).

Thereafter, in February 2002, the CPC defendants cross-claimed against Blockwell for

4

indemnification based upon Blockwell's improper actions (first cross-claim) and fraud in the inducement (second cross-claim).

In its cross-motion, Blockwell supports DVI's motion for summary judgment against the CPC defendants, but seeks to dismiss the claims asserted against it. As to the allegations regarding Bernstein, Blockwell contends that Bernstein is not an employee of Blockwell, but rather an independent contractor. Although Bernstein has been subpoenaed to testify, he has not appeared.

Summary judgment on a finance lease is properly granted upon proof of an executed lease, receipt of the equipment and nonpayment (See <u>Canon Financial Services, Inc. v Medico Stationery Service, Inc.</u>, ___AD2d ___, 751 NYS2d 194 [1st Dept 2002]). The CPC defendants argue that they were required to sign the lease in blank as a condition to obtaining financing, and that through the efforts of Blockwell, Bernstein and DVI, CPC became committed to acquire far more expensive equipment than the CPC defendants had anticipated, and that they were thus required to make payments for far more than they had expected.

This is not a sufficient defense to the within action. It is uncontroverted that the CPC defendants had control over which pieces of equipment they ordered. According to deposition testimony of Jeffrey Logel, the controller of CPC, Weinblatt determined which pieces of equipment to order (Logel EBT at 17:5-7). Weinblatt testified that she and Frankel were both responsible for the determination as to which equipment was ordered (Weinblatt EBT at 19: 21-23). In any event, Weinblatt also testified at her deposition that CPC had accountants working on the Lease (Weinblatt EBT at 26: 6-8).

Further, the CPC defendants do not deny that CPC retained the equipment and made

payments on the Lease for thirteen months before defaulting. The retention of the equipment

constitutes acceptance of the equipment under N.Y. UCC § 2-A-515 . N.Y. UCC § 2-A-407

provides that upon acceptance of the goods, "a lessee's promises under the lease contract become

irrevocable and independent * * * "  As to the CPC defendants' contention that certain

equipment, not ordered by them, was added to the lease schedule, this is a matter which needs to

be resolved, but does not affect the CPC defendants' liability on the Lease.

As to the Guarantee executed by Frankel, and Weinblatt, that document provides

> NOW THEREFORE, in order to induce Lessor to enter into the
> Lease, Guarantor, jointly and severally, unconditionally guaranties
> the faithful and full performance by Lessee of all terms and
> conditions of the Lease.  In the event of default by Lessee, or
> failure to faithfully perform all of the terms or conditions required
> of Lessee under the Lease, or in the event of failure of Lessee to
> make any or all payments of money required of it under the Lease,
> Guarantor unconditionally promises to pay to Lessor * * * all sums
> at any time due or unpaid under the Lease, plus costs of collection,
> including reasonable attorney fees * * *

Thus. Frankel and Weinblatt agreed to pay "all sums at any time due or unpaid under the Lease."

Frankel and Weinblatt argue that the Guarantee is invalid because it does not specify a dollar

amount for which they may be held liable. Even if a guarantee it is incomplete when signed,

where the guarantee is later completed and delivered with the guarantor's authorization, it is

valid (Kornfeld v NRX Technologies, Inc., 62 NY2d 686 [1984]). Here, Frankel and Weinblatt

were principals of CPC and had knowledge of, and control over, the items on the Lease which

they guaranteed (c.f., Bellevue Builders Supply Inc. v Belmonte, 271 AD2d 849 [3rd Dept

2000]).  Under these circumstances Frankel and Weinblatt are liable on their Guarantee

(Kornfeld v NRX Technologies, Inc., supra).  Given this determination, the CPC defendants

counterclaim for attorneys fees is dismissed.

As to the CPC defendants' cross-claims against Blockwell for indemnification and fraud, given that the CPC defendants had their own controller and accountant, and that they had the ability to investigate any information regarding the equipment they ordered, the CPC defendants' alleged reliance on Blockwell, and their claim that they were somehow pressured into buying more expensive equipment than they needed, is plainly without merit.  Nor are the Blockwell's alleged reassurances regarding the potential disposition of the equipment, actionable, as these are mere predictions of future events and cannot form the basis for a fraud cause of action (SRG Partners v Asch, 270 AD2d 4 [1st Dept 2000]).

Inasmuch as the CPC defendants have not raised viable defenses to their liability on the Lease and Guarantee, DVI's claims against Blockwell, which are based upon the CPC defendants' potential defenses, are moot.  Accordingly, DVI's claims against Blockwell for breach of contract, breach of the covenant of good faith and fair dealing, and fraud are dismissed.  Similarly, having determined that Blockwell is not liable to DVI, Blockwell's cross-claims against the CPC defendants for contribution and/or indemnification and contractual indemnification are dismissed.  Blockwell's first counterclaim against DVI, for contractual indemnification, is dismissed.

Accordingly, based upon the foregoing it is

ORDERED that DVI Financial Services Inc.'s motion for partial summary judgment is granted only to the extent that defendant Cardio Pulmonary Complex,. LLC is found liable for amounts due pursuant to the Lease agreement between the parties; that the defendants Perry Frankel and Rosemary Weinblatt are found liable on the Guarantee signed by them; and that the

7

CPC defendants third counterclaim for attorneys fees is dismissed; and it is further

ORDERED that defendant Blockwell Funding Corp.'s cross motion for summary judgment dismissing the complaint and the cross-claims asserted against it is granted; and it further

ORDERED that the following issues are referred to a Special Referee to hear and report with recommendations, except that, in the event of and upon the filing of a stipulation of the parties. as permitted by CPLR 4317, the Special Referee, or another person designated by the parties to serve as referee, shall determine the aforesaid issues:

FIRST, whether there was any equipment listed on the lease schedule for which CPC may have been improperly billed, i.e., equipment which was not delivered to CPC;

SECOND, whether there was any equipment on the lease schedule which DVI did not repossess;

THIRD, the fair market value of the repossessed equipment on the date of its repossession;

FOURTH, the amount of damages due to DVI under the terms of the Lease, taking into account any potential value of the repossessed equipment;

FIFTH, whether DVI improperly repossessed any medical equipment which was owned by Blockwell, and if so, the fair market value of such equipment;

SIXTH, the reasonable value of the services rendered by plaintiff's attorneys herein;

and it is further

8

ORDERED that a copy of this order with notice of entry shall be served on the Clerk of the Judicial Support Office (Room 311) to arrange a date of the reference to a Special Referee.

Dated: February 2f , 2003

ENTER:

_____
J.S.C.

9

Northern Leasing Systems v. Kollars,
Index No. 14350 (Samuels, J.) (N.Y.C. Civ. Ct. April 4, 2008)

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK : PART 32
-------------------------------------------------------------------X
NORTHERN LEASING SYSTEMS, INC.,
As Assignee of MBF Leasing, LLC,

                                                 Index No. 14350/2007

                            Plaintiff,

          -against-                                  **DECISION/ORDER**

GARY KOLLARS and LHC CAR WASH, LLC
d/b/a CAR TOYS CAR WASH,
                               Defendants
-------------------------------------------------------------------X

**HON. DEBRA ROSE SAMUELS, J.C.C.:**

Recitation, as required by CPLR 2219 (a), of the papers considered in the review of this motion to:
<u>renew/reargue plaintiff's motion for summary judgment and defendant's cross-motion for dismissal.</u>

| Papers | Numbered |
|---|---|
| Notice of Motion and Affidavit Annexed......................................... | 1-3 |
| Order to Show Cause and Affidavits Annexed ............................... | |
| Answering Affidavits ....................................................................... | 11 |
| Replying Affidavits ......................................................................... | 12 |
| Exhibits .......................................................................................... | 4-10 |
| Other .............................................................................................. | |

Upon the foregoing cited papers, the Decision/Order on this motion is as follows:

     In this action based upon a written equipment lease agreement and guarantee, defendants

move for an order pursuant to CPLR 2221 to reargue/renew the November 9, 2007 order of this

court. Plaintiff opposes. Based upon the discussion below, defendants' motion is granted, and upon

reargument/renewal the court adheres to its original decision.

     Defendants apparently seek both renewal and reargument.  A motion for leave to reargue

shall be based upon matters of fact or law allegedly overlooked or misapprehended by the court in

determining the prior motion, but shall not include any matters of fact not offered on the prior

motion (CPLR 2221[d][2]).  A motion for leave to renew shall be based upon new facts not offered

-2-

on the prior motion that would change the prior determination or shall demonstrate that there has been a change in the law that would change the prior determination, and shall contain reasonable justification for the failure to present such facts on the prior motion (CPLR 2221[e][2] and [3]). Although the statute requires that a combined motion for leave to reargue and leave to renew shall identify separately and support each item of relief sought (CPLR 2221[f]), this has not been done in the instant application.

This court was originally presented with a motion for summary judgment in lieu of complaint by plaintiff, which was opposed by defendants, and a cross-motion by defendants dismissing the complaint on the grounds of insufficiency of service and/or failure to state a cause of action, and forum non conveniens, as the forum selection clause is unenforceable due to fraud in the inducement. Plaintiff's motion was granted and defendants cross-motion was denied pursuant to the court's decision of November 9, 2007.

Defendants argue that plaintiff's own documents conclusively establish that plaintiff had no interest in the lease, and thus no standing to sue, and thus the action should have been dismissed for failure to establish a prima facie case. As this was not a ground under which defendants originally sought relief, the court will not visit it now.

Defendants argue that they had established that the lease was terminated/rescinded by mutual consent between the parties, and plaintiff/ an unrelated third-party cannot resurrect it. Again, this was not a ground under which defendants originally sought relief, and so will not be addressed now.

Defendants argue that the court misinterpreted the controlling authority of *Pludeman v. Northern Leasing Systems* (40 AD3d 366 [1st Dept 2007]), which defendants interpret to stand for the proposition that the defendants' assertion of fraud in the inducement in that case is a sufficient

-3-

basis upon which to grant defendants summary judgment and dismissal in this case. As previously stated in the original decision, the *Pludeman* case addresses issues at the pleading stage only, and permitted the parties who had signed equipment lease finance agreements to retain their claim of fraud against Northern Leasing Systems Inc. The Appellate Division, First Department made no other findings of fact or conclusions of law. Thus the holding in the *Pludeman* case does not support defendants' claim for summary judgment and dismissal.

The court also rejects defendants' contention that it should not have considered plaintiff's argument for ratification as it was offered in reply. The purpose of reply is to respond to defendants' arguments, so plaintiff's claim that defendants ratified the agreements through their actions was properly considered.

Defendants seek to address the ratification issue now. Defendants argue that they never intentionally paid pursuant to the agreement, and thus could not have ratified items of which they were unaware. In his affidavit in support of this motion Mr. Kollars asserts:

> Quite apart from the worthless nature of the equipment detailed in my earlier affidavit, (a) we did not "make" ten monthly payments; rather, these were amounts that, **unknown to us**, Plaintiff electronically deducted from our accounts. These deductions were made contrary to representations made to us by Plaintiff's agent, and we stopped the deductions as soon as we became aware of them; and (b) we received the entire four page lease only in September 2006 - seven (7) whole months **after** we stopped the automatic deductions and **after** Plaintiff accepted termination of the lease, and authorized and accepted the returned equipment without a word of protest.

Defendants argue that when they paid pursuant to the agreement via electronic debit, they were unaware that for ten months money was being removed from their account and sent to plaintiff. Defendant Mr. Kollars asserts that when he found out money was being debited, after his independent auditors were changed, he stopped the payments.

-4-

These statements contradict documents submitted by plaintiff. If the court were to fully credit Mr. Kollars' assertion that plaintiff only gave him a one page agreement, which he does not deny that he signed, that one page document does not support Mr. Kollars' assertions. Annexed as exhibit "A" to plaintiff's original motion for summary judgment in lieu of complaint is a copy of the equipment finance lease. The first page of the lease contains a provision "ABOUT YOUR BANK" where the bank's name, routing number and account number was entered and initialed by Mr. Kollars. This provision permitted MBF Leasing LLC or its successor or assignee to withdraw amounts due under the lease. In his affidavit Mr. Kollars does not address the fact that he initialed this provision on page one of the lease, which dooms his argument that he did not know that his bank account was being debited. It is irrelevant whether Mr. Kollars' independent auditors notified him of debit activity in his bank account or not. Mr. Kollars' signature on page one of the lease, along with the ten monthly debit payments, show that such payments were not clandestine and involuntary.

Furthermore, Mr. Kollars' assertion that the equipment provided was worthless is also contradicted by the DELIVERY AND ACCEPTANCE RECEIPT, annexed to plaintiff's original motion as exhibit "C", singed by Mr. Kollars on April 14, 2005. This receipt provides that the undersigned certifies that the equipment has been delivered in good working order and has been installed to the satisfaction of the Lessee, and unconditionally accepts the Equipment for all purposes of the Lease. The receipt further provides that MBF Leasing, LLC in no way or manner assumes any responsibility, either now or hereafter, for the use, performance, functioning, maintenance or service of the Equipment, or for its suitability or adaptability for any particular purpose.

In this application, Mr. Kollars for the first time asserts that when he stopped the automatic deductions he informed MBF by letter dated February 22, 2006 that defendants were terminating the

-5-

lease. In furtherance of such termination Mr. Kollars indicates he called MBF's representative Ortiz in New York, who told Mr. Kollars "no problem", and gave the address for the return of the equipment. But page one of the lease has a provision, also specifically initialed by Mr. Kollars, "LEASE ACCEPTANCE" which provides in pertinent part: "Lessee has read and agreed to all terms and conditions contained in this Equipment Finance Lease. THIS IS A NON-CANCELABLE LEASE FOR THE FULL TERM INDICATED HEREIN". Page one of the lease also contains a provision "SCHEDULE OF PAYMENTS" which lists the minimum lease term as 48 months.

Mr. Kollars expresses outrage at the terms of this agreement, which he signed, but the court is constrained to enforce the lease.

This constitutes the decision and order of the court.

Dated: New York, New York
~~March~~     , 2008
4/4/08.

J. C. C.

<u>Pludeman v. Northern Leasing Services, Inc.,</u>
Index No. 04/101059, (Heitler, J.), (Sup. Ct. N.Y. County April 7, 2005)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:     IAS PART 30
----------------------------------------------------------X
KEVIN PLUDEMAN, CHRIS HANZSEK
d/b/a HANZSEK AUDIO, SARA HUSH,
OZARK MOUNTAIN GRANITE & TILE CO.
and DENNIS E. LAUCHMAN, on behalf of
themselves and all others similarly situated,

Index No. 101059/04

                                        Plaintiffs,

           -against-                                    **DECISION & ORDER**

NORTHERN LEASING SYSTEMS, INC.,
JAY COHEN, STEVE BERNADONE,
RICH HAHN and SARA KRIEGER,

                                        Defendants.
----------------------------------------------------------X
SHERRY KLEIN HEITLER, J.:

The corporate defendant Northern Leasing Systems, Inc. ("N.S."), and the individual defendants Jay Cohen, Steve Bernadone, Rich Hahn and Sara Krieger, officers and the alleged management of NLS (hereinafter "individual defendants"), move for an order dismissing this action, pursuant to CPLR §3211 (a)(1), (3), (4), (5) and (7).

The amended complaint alleges a purported class action against the defendant NLS and the individual defendants based upon the defendants' scheme to defraud the plaintiffs, generally small businesses, which entered into finance lease agreements with NSL for credit card point of sale terminals, and principals of those businesses, who personally guaranteed the lease agreements, by concealing material terms of the agreements unfavorable to the putative class.

The amended complaint alleges causes of action for violations of the Federal Racketeering Statue, 18 U.S.C. §1962, the Electronic Funds Transfer Act, 15 U.S.C. §1692 and Fair Debt Collection Practices Act, 15 U.S.C. §1692 as well as causes of action for fraud, negligent misrepresentation, breach of implied covenant of good faith and fair dealing, breach of contract,

unjust enrichment and money had and received.

The defendant NLS previously moved for dismissal of the original complaint, which was resolved pursuant to a "so ordered" stipulation. The "so ordered" stipulation provided for, *inter alia*, the addition of Jane Hush, Ozark Mountain Granite & Tile Co. and Dennis E. Lauchman as plaintiffs; the addition of the individual defendants as defendants and leave to serve an amended complaint. The issue of whether plaintiff Challenger Deep Imports, Inc., a plaintiff in the original complaint, but not a plaintiff in the amended complaint, properly discontinued its claims remained an open issue subject to motion practice.

The amended complaint alleges that plaintiffs were mislead into believing that the four page lease agreement and personal guaranty was a single page document as both the lease's acceptance and personal guaranty was on the first page; that the first page of the document contains nothing incorporating the remaining three pages, which would alert the plaintiffs to the existence of additional pages; that the defendants' representatives or salespersons never discussed, mentioned or even referred to the remaining three pages; that they were manipulated into signing in a hurry; that the lease agreement was clipped in a clip-board making it appear that the agreement was a single page document; that they were not given a copy of the lease agreement at the time they signed and that they had to telephone a special number and request a copy.

The amended complaint, while conceding that at the bottom of the first page of the lease it reads "Page 1 of 4," alleges that such is tucked away in the far left corner in print size alleged to be "microprint."

The amended complaint further alleges that undisclosed pages concealed higher charges, indefinite automatic electronic deductions unless lessee gave a 60-day notice of cancellation, no

warranties from NLS, absolute obligation to pay, insurance obligations, late charges, attorneys' fees and expenses and a New York choice of forum.

Defendants' motion to dismiss includes copies of the leases and guarantees of the plaintiffs, which consist of a four-page document in booklet form, with all pages being attached and double-sided. On the bottom of page one, the signature page, in the left corner it states "Page 1 of 4." Additionally, in extremely small type, the paragraph, on the signature page, allowing automatic bank account deductions refers to paragraph 11, which is found on page three of the agreement. The lease agreements are the documentary evidence upon which defendants seek dismissal.

The defendants also contend that the terms of the finance lease agreements alleged to be burdensome, unfair and onerous are specifically allowed or imposed by Article 2A of the New York Uniform Commercial Code.

Prior to addressing the sufficiency of the various causes of action alleged in the amended complaint, consideration will be first be given to other issues raised by the motion papers. The first are the affidavits, submitted by plaintiffs in opposition to this dismissal motion, which included not only affidavits from the named plaintiffs but affidavits from five non-parties.

While the affidavits of the named plaintiffs are generally consistent with the allegations in the amended complaint, the affidavits of the non-parties attempt to allege an entirely new theory, with three of the non-party affiants raising issues of forgery. Mark Thomason alleges his signature was forged on the lease acceptance but not on the personal guarantee; Judson Ross alleges that it was impossible for him to execute the lease (and a personal guarantee), on behalf of Rapid Cash Advances, Inc., a Florida corporation, in which he is a principal, since, at the time he allegedly signed, he was in the Ukraine. The alleged forgery appears to have been by a former employee of

Rapid Cash Advances, Inc. Finally, Keri Kettler, who signed a lease agreement on behalf of Yodarno, Inc., a Washington corporation, and personally guaranteed the lease, alleges that the copy of the lease she obtained from defendants differed from the lease which she signed and copied, at the time of execution, in that the lease she signed was only one page with the left corner stating "Page 1" rather than "Page 1 of 4."

While generally a court should consider affidavits to remedy any defects in the pleading on a motion to dismiss for insufficiency, the affidavits of these non-party affiants shall not be considered as the allegations are inconsistent and contrary to the allegations in both the affidavits of the named plaintiffs and the amended complaint and is an improper attempt at repleading without court leave.

The next issue is defendants' argument that the amended complaint must be dismissed since plaintiffs are attempting to plead various causes of action when in reality their claims are for unconscionability with their exclusive remedy being recession under New York UCC §2-A-108. The law is well settled that the UCC does not displace common-law causes of action unless the particular Code provision expressly so provides (*Bank of Hawaii International Corp. v Marco Trading Corp.*, 261 AD2d 333 [1st Dept 1999], quoting *Hechter v New York Life Ins. Co.*, 46 NY2d 34, 39 [1978]). Since there is nothing in UCC §2-A-109 stating it replaces other available remedies, the plaintiffs are entitled to allege other available causes of action. Accordingly, dismissal based upon this argument is denied.

Defendants also contend that the class allegation contained in the amended complaint should be stricken as the alleged RICO and fraud claims are not generally suitable for class action treatment since issues of reliance and scienter would predominate over any purported proof of a common

-4-

scheme to defraud. Additionally, to the extent plaintiffs seek treble damages under the RICO statute such would not be recoverable in a class action, pursuant to CPLR 901(b).

While the legal positions asserted above could be relevant when plaintiffs move for an order of class action certification, these arguments are premature. Accordingly, that branch of defendants' motion seeking to strike the class action allegations is denied without prejudice to renew at the appropriate time.

As to the issue of whether Challenger Deep Imports, Inc., a named plaintiff in the original complaint, may discontinue it claims, without court approval and without notice to all members of the putative class, appears to be an issue of first impression. Plaintiffs maintain that CPLR 908 is applicable only when there is an attempt to discontinue the class action itself, rather than a claim of an individual class member. The purpose of CPLR 908 is to protect the putative class and to discourage collusive settlements of class actions. Clearly the plaintiff Challenger Deep Imports, Inc.'s attempt to discontinue its claim is not based upon settlement with the defendants as the defendants object to discontinuation based upon a perceived prejudice to them. Therefore, this court finds that a voluntary discontinuance would have been permissible, however, it finds, no evidence that plaintiff Challenger Deep Imports, Inc. ever served a notice of discontinuance in a timely manner as provided by CPLR 3217(a). Accordingly, this application is denied without prejudice to renew in the context of a motion seeking an order of discontinuance, pursuant to CPLR 3217(c). Although, the motion should be on notice to the named plaintiffs and defendants, notice need not be given to the putative plaintiff class.

Finally, with respect to that branch of defendants' motion seeking an order dismissing the individual claims of plaintiffs Kevin Pludeman and Sarah Jane Hush, pursuant to CPLR 3211(a)(4),

based upon prior pending actions, such is denied. The prior pending actions were brought by NLS against Pludeman and Hush, in New York City Civil Court, based upon the personal guarantees. The relief sought in this action differs from the relief available, by way of counterclaim, in the Civil Court action and includes additional parties.

This court shall now address each of the causes of action alleged in the amended complaint.

*RICO CLAIMS*

On a motion to dismiss, the factual allegations of the complaint must be accepted as true and the complaint must be liberally construed in the light most favorable to plaintiffs. (See, *Cron v. Hargro Fabrics, Inc.*, 91 N.Y.2d 362 [1997].)

The elements of a cause of action under RICO are as follows: (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an enterprise (7) the activities of which effect interstate or foreign commerce (*Moss v Morgan Stanley, Inc.*, 719 F2d 5, 17 [2d Cir 1983], *cert. denied*, 465 US 1025 [1984]).

The defendants seek dismissal of the RICO claims on the grounds that the alleged predicate acts of mail and wire fraud are not pleaded with particularity; that the distinctness requirement of an enterprise is lacking and that plaintiffs cannot show a RICO injury. The defendants also maintain that the individual plaintiffs, as guarantors, have no standing as they suffered only a derivative RICO injury and that with respect to plaintiffs Kevin Pludeman, Chris Hanzsek and Hanzsek Audio, any RICO claims they may have had are barred by the 4-year statute of limitations applicable to RICO claims.

-6-

With respect to the alleged mail fraud the amended complaint at paragraph 91 list 3 mailings to plaintiff Pludeman, 4 mailings to plaintiff Hanzsek and 1 mailing to plaintiff Hush.

The predicate acts sounding in fraud must comply with Fed. R. Civ. P. 9(b) which provides that "[i]n all averments of fraud ...the circumstances constituting the fraud...shall be stated with particularity." To specify fraud with particularity, a plaintiff must allege specifically the circumstances of the fraud, including the content of any alleged misrepresentation, the date and place of the misrepresentation and the identity of the speaker or writer (*Cohen v Koenig*, 25 F3d 1168, 1173 [2d Cir 1994]). The amended complaint fails to give the content of the items mailed, fails to state how the items were false and misleading and fails to allege who made the misrepresentations.

With respect to the alleged wire fraud, the amended complaint alleges a single telephone call to plaintiffs Pludeman, Hanzsek and Hush. There is however no allegation concerning the content of the alleged misleading statements and no allegations as to the identity of the speaker. The attorneys for the plaintiffs, in an attempt to remedy this defect, assert in their memorandum of law that the monthly automatic electronic deductions from plaintiffs' bank accounts constituted wire fraud.

The signature page of the lease agreements provided for monthly automatic electronic deductions from the lessee's bank account and the lessee was required to provide a voided check for purpose of commencing said deductions. Therefore, the wire transfers did not defraud the plaintiffs.

Accordingly, this court finds that the amended complaint fails to sufficiently allege the predicate act of mail and wire fraud (*SMS Marketing & Telecommunications, Inc. v H.G. Telecom, Inc.*, 949 F Supp 134 [ED NY 1996]).

-7-

Additionally, as to the individual defendants, the amended complaint fails to allege facts sufficient to create an inference that each individual defendant knew of and participated in the fraud. It is well established that the mere fact that an individual is affiliated with a defendant corporation fails to satisfy Rule 9(b)'s pleading requirements as to that individual (*Mills v Polar Molecular Corp.*, 12 F3d 1170, 1175 [2d Cir 1993]).

The amended complaint fails to allege that the enterprise is distinct from the NLS and the allegation that the corporate defendant associated with its own employees or agents carrying on the regular affairs of the corporation fails to satisfy the distinctness requirement (*Riverwoods Chappaqua Corp. v Marine Midland Bank*, 30 F3d 339, 343-44 [2d Cir 1994]).

Accordingly, that branch of defendants' motion seeking dismissal of all RICO claims is granted, including any RICO conspiracy claim as well, as dismissal of the substantive RICO claims mandates dismissal of any RICO conspiracy claim (*Purgess v Sharrock*, 806 F Supp 1102, 1110 [SD NY 1992]). As such, this court finds no need to address those branches of the defendants' motion seeking dismissal of some of the RICO claims based upon either lack of standing or as barred by the statute of limitations.

*EFTA*

Plaintiffs' causes of action based upon Electronic Funds Transfer Act, 15 U.S.C. §1692, are dismissed as plaintiffs offer no opposition to that branch of defendants' motion seeking their dismissal. Defendants are seeking attorneys' fees, and a reference as to the amount of said fees, arguing that such claims were alleged in bad faith and for the purpose of harassment. This court finds that these claims were not alleged in bad faith, therefore, it denies that branch of the defendants' application for attorneys' fees.

### FDCPA

The amended complaint alleges a cause of action for violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, alleging defendants used deceptive means in an attempt to collect a debt from the plaintiff Pludeman by sending him a phony summons and verified complaint, when no legal action was commenced. While plaintiffs maintain that the FDCPA is applicable alleging that the claim against Pludeman was personal, since it is based upon his personal guaranty, 15 U.S.C. §1692a(5) defines the term "debt" as, "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes..."

Pludeman's alleged debt is not based upon a consumer's alleged obligation to pay money but rather a guaranty to pay an obligation of his business and therefore does not arise out of a transaction primarily for personal, family, or household purposes.

Accordingly, that branch of defendants' motion seeking dismissal of the cause of action alleging a violation of FDCPA is granted and the application for attorney fees is denied.

### FRAUD

The elements of a cause of action for fraud include (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff.

CPLR 3016(b) provides that in a fraud action, the circumstances constituting the wrong shall be stated in detail.

As stated earlier, the amended complaint alleges that the plaintiffs were mislead into believing that the four-page lease agreement and personal guaranty was a single page document as

-9-

both the lease's acceptance and personal guaranty was on the first page; that the first page of the document contains nothing incorporating the remaining three pages, which would alert the plaintiffs to the existence of additional pages; that the defendants' representatives or salespersons never discussed, mentioned or even referred to the remaining three pages; that they were manipulated into signing in a hurry; that the lease agreement was clipped in a clip-board making it appear that the agreement was a single page document; that they were not given a copy of the lease agreement at the time they signed and that they had to telephone a special number and request a copy.

The law is well settled that a fraud may be committed by concealment as well as by positive falsehood or misrepresentation. While mere silence may constitute a fraud if there exists a legal duty to communicate to the other party, the allegations in the amended complaint go well beyond mere silence. In addition to failing to disclose material terms, the amended complaint alleges conduct which might lull a party into a false sense of security that the lease agreement and personal guaranty were a single page document, deliberately concealing the other three pages of the agreement. While it is true that the signature page, contrary to the amended complaint, does refer to paragraph 11, which is found on page three of the agreement, the type size could constitute evidence of intentional deception under such circumstances (*George v Lumbrazo*, 184 AD2d 1050 [4th Dept 1992]).

This court finds that the amended complaint sufficiently alleges a cause of action for common-law fraud as against the corporate defendant NLS, pursuant to CPLR 3016(b) as well as the individual defendants based upon the allegations that the individual defendants were officers of the corporation and that they participated in the fraud (*Finkel v D.H. Blair & Co.*, Inc., 213 AD2d 588 [2d Dept 1995]).

-10-

Also, contrary to defendants' position, this fraud claim is independent of any contract claim and where a party has fraudulently induced plaintiff to enter into a contract, it may be liable in tort.

Accordingly, that branch of defendants' motion seeking dismissal of the fraud cause of action is denied.

## NEGLIGENT MISREPRESENTATION

A cause of action for negligent misrepresentation requires that defendant: 1) had a duty to use reasonable care to impart correct information due to a special relationship between the parties; 2) that the information was false; and 3) that plaintiff reasonably relied on the information.

This action involves a commercial context and liability has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified (*Kimmell v Schaefer*, 89 NY2d 257 [1996]).

There is no allegation in the amended complaint of the existence of a special relationship, which requires a closer degree of trust than an ordinary business relationship, existing between the parties that would support a cause of action for negligent misrepresentation (*Fresh Direct, LLC v Blue Martini Software, Inc.*, 7 AD3d 487 [2nd Dept., 2004]).

Accordingly, that branch of defendants' motion dismissing this action for insufficiency is granted.

## PUNITIVE DAMAGES

This court finds that the amended complaint supports its demand for punitive damages as the allegations address more than a private wrong contending that defendants engaged in a course of conduct throughout the United States with such wanton dishonesty as to imply a criminal

indifference to civil obligations (*New York University v Continental Ins. Co.*, 87 NY2d 308 [1995]).

Accordingly, that branch of defendants' motion seeking to dismiss the demand for punitive damages is denied.

## BREACH OF CONTRACT

The amended complaint fails to allege a breach as there is no claim that defendants were actually in breach of any of the provisions of the four page lease. In fact, the amended complaint seeks to void the lease agreements based upon defendants' misleading plaintiffs into believing that the lease agreement was a single page document.

Accordingly, that branch of defendants' motion to dismiss the breach of contract claim is granted.

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

Every contract is subject to an implied covenant of good faith and fair dealing and the covenant is breached "when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement" (*Jaffe v Paramount Communications Inc.*, 222 AD2d 17, 22-23 [1st Dept 1996]).

The amended complaint does not allege what benefits plaintiffs were deprived of due to the breach of the covenant of good faith and fair dealing.

Accordingly, that branch of defendants' motion seeking to dismiss the cause of action for breach of the covenant of good faith and fair dealing is granted.

## MONEY HAD AND RECEIVED AND UNJUST ENRICHMENT

The amended complaint sufficiently states causes of action for money had and received and unjust enrichment.

Accordingly, that branch of defendants' motion seeking to dismiss these causes of action are denied.

## SUMMARY

The defendants' motion is granted to the extent of dismissing the causes of action alleged in the amended complaint for violations of RICO, EFTA and FDCPA, and for negligent misrepresentation, breach of contract and breach of implied covenant of good faith and fair dealing.

The plaintiff Challenger Deep Imports, Inc. shall remain as a plaintiff in this action pending a motion for leave to discontinue its claims, pursuant to CPLR 3217(b).

Any branch of the defendants' motion not specifically addressed, in this summary, is denied.

DATED:   APRIL 7, 2005

SHERRY KLEIN HEITLER
J.S.C.

-13-

# Supreme Court of the State of New York
## County of New York

Index No: 04/101059

Kevin Pludeman, Chris Hanzsek d/b/a Hanzsek Audio,
Sarah Jane Hush, Ozark Mountain Granite & Tile Co., and
Dennis E. Lauchman on behalf of themselves and all others similarly situated,

Plaintiffs

v.

Northern Leasing Systems, Inc., Jay Cohen,
Steve Bernardone, Rich Hahn, and Sara Krieger

Defendants

**Notice of Entry**

ENTERED IN DOCKET
4 / 25 / 05

**Chittur & Associates, P.C.**
The Lincoln Building
60 East 42nd Street, Suite 1501
New York, NY 10165
Tel: (212) 370-0447
Attorneys for Plaintiffs and the Class

<u>Pludeman v. Northern Leasing Services, Inc.</u>,
Index No. 04/101059, 40 A.D.3d 366, <u>lv</u>. <u>to appeal granted</u>, __ A.D. 3d __ (1st Dep't
Sept. 18, 2007)

At a Term of the Appellate Division of the Supreme
Court held in and for the First Judicial Department in
the County of New York on September 18, 2007.

Present:  Hon. Angela M. Mazzarelli,        Justice Presiding,
               Richard T. Andrias
               George D. Marlow
               John T. Buckley
               James M. McGuire,                 Justices.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
Kevin Pludeman, et al.,
    Plaintiffs-Respondents-Appellants,

                    -against-                              M-3074

                                                Index No. 101059/04
Northern Leasing Systems, Inc.,
et al.,
    Defendants-Appellants-Respondents.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

        Defendants-appellants-respondents having moved for leave to
appeal to the Court of Appeals from the decision and order of
this Court entered on May 15, 2007 (Appeal No. 159),

        Now, upon reading and filing the papers with respect to the
motion, and due deliberation having been had thereon,

        It is ordered that the motion is granted, and this Court,
pursuant to CPLR 5713, certifies that the following question
of law, decisive of the correctness of its determination, has
arisen, which in its opinion ought to be reviewed by the Court
of Appeals:

            Was the order of this Court, which in part,
            modified the order of the Supreme Court,
            New York County, entered on or about April 7,
            2005, properly made?"

        This Court further certifies that its determination was made
as a matter of law and not in the exercise of discretion.

                        ENTER:

                        Deputy Clerk.